IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARIAN WOODBRIGHT, ET AL., *on behalf of themselves and all others similarly situated,* | § § § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:24–CV–04611 |
| | § | Judge Ellison |
| HEALTH MATCHING ACCOUNT | § | |
| SERVICES, INC., | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT HEALTH MATCHING ACCOUNT SERVICES, INC.'S
MOTION TO QUASH OR MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

I.  Nature and Stage of Proceeding ......................................................................... 1

    A.  Defendant's Motion for Protection Regarding Subpoena to One Inc.: the Court Provides Guidance to the Parties on the Scope of Discovery ........................................................................................ 1

    B.  Plaintiffs Substantially Narrow the Scope of the Putative Class to Terminated Members for a Limited Period. ........................................ 2

    C.  The Subpoena to Plains Capital Bank and the First Meet and Confer: Plaintiffs' Counsel Agrees to Recall or Withdraw the Subpoena in Exchange for Defendant Counsel's Agreement to Confirm Whether the Bank Holds Documents Responsive to Plaintiffs' Narrower Request. ................................................................. 3

    D.  Plaintiffs' Counsel Reneges on His Agreement Regarding the Bank Subpoena Without Explanation. ................................................... 4

    E.  The Second Meet and Confer:  Despite their Prior Statements about Narrowing the Subpoena's Scope, Plaintiffs' Counsel State that they "Changed their Minds" and Insist on Enforcement of the Subpoena as Written. .................................................................................. 5

II.  Summary of Issues Presented and Standard of Review .................................... 8

III.  Argument ............................................................................................................. 10

    A.  Plaintiffs Reneged on the Parties' Agreement to Resolve the Issues Underlying this Motion Without Explanation, Unnecessarily Requiring Court Intervention. ....................................... 10

    B.  The Subpoena Is Overly Broad Seeks the Production of Irrelevant Documents. .................................................................................................. 13

    C.  The Subpoena Seeks Information Concerning Individuals Other than the Plaintiffs and the Modified Class and Is Not Reasonably Tailored to the Information they Claim they Seek. ............................. 19

    D.  The Subpoena Improperly Seeks the Production of HMAS' Financial Information Unrelated to the MRC plan or any HMAS plan. .......................................................................................................... 20

IV.  Conclusion ........................................................................................................... 22

Certificate of Conference .............................................................................................. 23

Certificate of Service ..................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al Parker Buick Co. v. Touchy,*
788 S.W.2d 129 (Tex. App.—Houston [1st Dist.] 1990 ............................................ 21

*Anadarko Petroleum Corp.*, 2020 WL 4937122 ...................................................... 20

*Blanchard v. Circle K Stores, Inc.*, C.A. No. 6:19-CV-00856, 2021 WL 4255407
(W.D. La. Sept. 17, 2021) ......................................................................... 17

*Crosby v. Louisiana Health Serv. & Indem. Co.,*
647 F.3d 258 (5th Cir. 2011) .................................................................. 14, 17

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.,*
876 F.3d 690 (5th Cir. 2017) ....................................................................... 10

*In re Islamorada Fish Co. Texas, L.L.C.,*
319 S.W.3d 908 (Tex. App.—Dallas 2010, orig. proceeding) ................................. 21

*Safeshred, Inc. v. Martinez,*
365 S.W.3d 655 (Tex. 2012) ........................................................................ 21

*Steel Dust Recycling, LLC v. Robinson,*
No. 4:19-CV-02818, 2023 WL 4946533 (S.D. Tex. Mar. 30, 2023) ........................ 10

*Stemmons Enter., L.L.C. v. Fisker, Inc.,*
No. 4:22-CV-01487, 2023 WL 7545223 (S.D. Tex. Nov. 13, 2023)......................... 10

*Topsoe, Inc. v. Casale US, Inc.,*
No. 3:24-CV-00033, 2025 WL 227344 (S.D. Tex. Jan. 17, 2025) ........................... 17

**Statutes**

28 U.S.C. §1332............................................................................................. 1

**Rules**

Federal Rule of Civil Procedure 26 ................................................................ passim

Rule 45 ...................................................................................................... 20

Defendant Health Matching Account (HMAS) files this Motion to Quash or Modify Subpoena and for Protective Order (Motion), pursuant to Federal Rule of Civil Procedure 26(c), and would show the Court as follows:

## I. NATURE AND STAGE OF PROCEEDING

Plaintiffs Darian Woodbright, Melanie Furniss, Bobbie Pope, Robert Mainini, and Jacques Pierre Meuret filed this class action lawsuit pursuant to 28 U.S.C. §1332(d), seeking to represent a putative class defined as:

> All persons and entities throughout the United States who entered a "Primary Holder Contract" with HMA.

ECF No. 1, at ¶ 70. The Complaint alleges that HMAS breached the Primary Holder Contracts by changing the method by which HMA paid medical reimbursements to members from a Medical Reimbursement Card ("MRC," the so-called "debit card") to direct payment. *See* ECF No. 1, at ¶¶ 6, 31, 34–40, 42, 43, 47, 48, 62, 77, 100, 104. HMAS timely filed its Answer to the Complaint. [ECF No. 15]. The Court entered its Scheduling Order for Class Certification on April 7, 2025, which governs the discovery at issue. [ECF No. 21].

A.  **Defendant's Motion for Protection Regarding Subpoena to One Inc.: the Court Provides Guidance to the Parties on the Scope of Discovery.**

On April 7, 2025, Plaintiffs served a Subpoena Duces Tecum on One Inc., an entity that issued and processed the debit card requests for the MRC at issue (the "One Inc. Subpoena"). HMAS filed a Motion for Protective Order with respect to the One Inc. Subpoena. The Court granted Defendant's Motion for Protective Order in part, ordering that: (i) the contract HMAS executed with One Inc. could be included

in the production; (ii) the Subpoena be narrowed to the period from August 2021 through December 2024, (iii) the production exclude routine operational records and communications unrelated to the MRC program's terms or termination; and (iv) the Court imposed the following confidentiality protections: (a) redaction of all protected health information (PHI) including individual identifiers and medical codes and (b) designation of account-level financial data and other sensitive information as "Attorneys' Eyes Only." The Court also clarified that the contracts governing the MRC program and the communications regarding the program's termination was permitted for production. The Court asked attorneys to craft a joint protective order to submit to the Court. [ECF Minute Entry May, 28, 2025].

Thereafter, the Parties conferred and could not agree on the form of Protective Order and submitted their respective versions to the Court for consideration. *See* August 8, 2025 email from A.J. Johnson to Art Rivera, including attachments. The Parties' proposed Orders are substantially the same, except that Plaintiffs proposed that the Order be "expressly limited to the subpoena to One, Inc. and applicable only to the One, Inc. subpoena response. No findings are made as to relevancy or lack thereof of any information sought from other sources." *Id.*

B.    **Plaintiffs Substantially Narrow the Scope of the Putative Class to Terminated Members for a Limited Period.**

On August 18, 2025, the Court entered an Order of Dismissal on the Parties Joint Stipulation of Dismissal [ECF 43], dismissing Plaintiffs Darian Woodbridge, Rober Mainini, and Jacques Pierre Meuret without prejudice, leaving Melanie Furniss and Bobbie Pope as parties Plaintiff. Thereafter, on August 19, 2025,

Plaintiffs Furniss and Pope filed a Motion for Class Certification under seal [ECF 46], substantially narrowing the scope of the putative class to:

> All individuals who enrolled in a Health Matching Account ('HMA') with Defendant Health Matching Account Services, Inc. on or before September 20, 2023, and whose HMA plans were terminated between October 12, 2023, and May 7, 2025, resulting in forfeited contributions and matching payments.

ECF 46, at 2-3 (the "Modified Class").

C.  **The Subpoena to Plains Capital Bank and the First Meet and Confer: Plaintiffs' Counsel Agrees to Recall or Withdraw the Subpoena in Exchange for Defendant Counsel's Agreement to Confirm Whether the Bank Holds Documents Responsive to Plaintiffs' Narrower Request.**

On August 22, 2025, Plaintiffs served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Plains Capital Bank (the "Bank"), seeking production of:

> Any and all documents referring or relating to accounts held by Health Matching Account Services, Inc. from October 1, 2023 and May 7, 2025.

*See* **Exhibit A** (the "Bank Subpoena"). In his email transmitting the Subpoena, Alexander Loftus, Plaintiffs' counsel, explained that the Bank Subpoena was "***necessary to confirm the answers to interrogatories provided***." *See* **Exhibit B** (emphasis added)**.** Later that same day, Defendant's counsel met with Mr. Loftus and his co-counsel, Carl Johnson, regarding the Subpoena and Defendant's intent to file a Motion for Protection given that the Bank Subpoena, much like the One Inc. Subpoena, was overbroad, contrary to the guidance provided by the Court. Additionally, the Bank Subpoena and was not limited to evidence relevant to the now-reduced putative class.

Mr. Lotus repeated his explanation that the information was intended to obtain information to confirm the accuracy of certain Attachments to Defendant's response to Plaintiffs' First Set of Interrogatories concerning the dollar value of the contribution and matching amounts forfeited by the Modified Class. Defendant's counsel then explained that the Bank did not likely possess responsive to Plaintiffs' expressed need, but, in any event, the Subpoena as written was also wholly beyond the scope of the information Plaintiffs claim to seek as relevant to the claims asserted in the Complaint.

After further discussion, the Parties agreed to resolve the dispute over the Subpoena: Mr. Lotus agreed to contact the process server to recall the Subpoena or to withdraw it and, in exchange, Defendant's counsel agreed to work with the Bank to determine whether and to what extent the Bank held records that could verify the accuracy of the forfeiture amounts for the Modified Class. Because the Parties resolved the issue, Defendant's counsel sent a confirmation of the agreement on all issues, including Mr. Loftus' agreement to recall or withdraw the Subpoena, to Messrs. Loftus and Johnson that same afternoon. *See* **Exhibit C.**

D.   **Plaintiffs' Counsel Reneges on His Agreement Regarding the Bank Subpoena Without Explanation.**

On August 26, 2025, Defendant's counsel contacted counsel for the Bank to inform it of the Parties agreement to resolve the issues concerning the Bank Subpoena. In response, the Bank's counsel emailed Mr. Loftus to confirm that he was withdrawing the Subpoena per the agreement reached by the Parties on August 22. *See* **Exhibit D**.

Contrary to the Parties agreement reached at the meet and confer, Mr. Loftus responded to the Bank's counsel the next day, stating, "I wasn't going to totally withdraw it. ***I was going to narrow the scope.***"  *See* **Exhibit E**. (emphasis added). Bank counsel then responded by asking Mr. Loftus counsel, "[i]f you are going to narrow the scope, please confirm in writing what material you are seeking and what material you no longer seek." *See* **Exhibit F.** Mr. Loftus replied:

> The issue is that HMA represents it earned X amount and retained Y amount. We are seeking records sufficient to confirm those representations ***and don't need to go fishing now.***
>
> Mr. Duffy thinks stating this goal can enable a smaller production. I think that still requires complete statements for the HMA accounts during the relevant period even with that narrow goal.

*See* **Exhibit G** (emphasis added). Defendant's counsel reminded Mr. Loftus that he had already agreed to withdraw the Subpoena, but that if Mr. Loftus had "changed his mind," the parties would need to conduct a second meet and confer on the issue. *See* **Exhibit H**. The next day, Mr. Johnson responded by saying,

> ***The bank has asked for written correspondence to narrow the scope, and we are engaging with them accordingly.*** Since they are not demanding a new subpoena, we see no need to issue one. If you plan on filing a motion based on the current subpoena and our course of correspondence with the bank, we are standing on our position, absent a material change from the bank's counsel.

*See* **Exhibit I** (emphasis added).


E.     **The Second Meet and Confer:  Despite their Prior Statements about Narrowing the Subpoena's Scope, Plaintiffs' Counsel State that they "Changed their Minds" and Insist on Enforcement of the Subpoena as Written.**

Because Plaintiffs' counsel backed out of the Parties' previous agreement, on August 29, 2025, Defendant's counsel conducted a second meet and confer regarding the Subpoena with Mr. Johnson, Mr. Loftus' co-counsel. In the second meet and confer, Mr. Johnson freely acknowledged that he and Mr. Loftus had previously agreed to withdraw or recall the Subpoena at the August 22 meet and confer, but that they later "changed their minds" and reverse field on the agreement. He also admitted that after the August 22 meet and confer, he and Mr. Loftus had discussed narrowing the scope of the Subpoena with the Bank, but that he and Mr. Loftus simply "changed their mind" about narrowing the scope of the Subpoena, without explanation. In response to this sudden reversal by Plaintiffs' counsel on these issues, Defendant's counsel asked Mr. Johnson to provide a good faith basis for their reversal from the first meet and confer and a legal basis for the request for all account information held by Defendant, given that (i) the Modified Class consisted solely of individuals who terminated membership between October 2023 and July 7, 2025, (ii) Mr. Loftus admitted that were actually seeking a narrower scope of information than the Subpoena as written; and (iii) unlike One Inc., the Bank was not involved in processing the debit cards at issue or in processing any claims reimbursement for any member, including the Modified Class. Mr. Johnson declined to provide any explanation other than to say that he did not know what records the bank actually held and until he could review those records he would not be able to determine whether the records he really is seeking are held by the Bank.

Defendant's counsel then proposed that if Plaintiffs were attempting to obtain a narrower scope but did not wish to waive its right to later attempt to seek the broader information sought in the Bank Subpoena, then the parties could agree to suspend the date by which objections to the Bank Subpoena as written would need to filed, to afford the Parties an opportunity to work with the Bank on the narrower scope without resorting to Court intervention until the process was completed. Mr. Johnson flatly rejected the proposal. Despite several attempts by defense counsel to understand the basis for wide-ranging subpoena and to understand the complete retraction of the previous agreement, Mr. Johnson provided no explanation; he said only that stating that Plaintiffs would "stand on" the Subpoena as written, without narrowing or modifying its scope, and that if Defendant objected, it would need to file a Motion for Protection.

After the conference, Defendant's counsel emailed the Bank's counsel to inform him that, despite prior communications from Messrs. Loftus and Johnson that Plaintiffs were seeking a narrower scope for the subpoena, Plaintiffs had changed their mind and were now seeking to enforce the Subpoena as written. *See* **Exhibit J**. Mr. Loftus responded as follows:

> I think this was addressed wrong.
>
> Yes, your apparent panic over the subpoena gave me pause. Carl and I discussed the extreme response to a routine subpoena and determined it was best for our clients to let the subpoena process play out in the ordinary course.
>
> **I'm sorry for the about face** but why hire smart people if I don't listen to them?

*See* **Exhibit. K**.  This Motion followed.

## II.  SUMMARY OF ISSUES PRESENTED AND STANDARD OF REVIEW

As a threshold matter, Defendant attempted to resolve this issue without Court intervention consistent with Rule 26 (c). Indeed, the Parties **reached an agreement to resolve the matter during the first meet and confer**: Plaintiffs' counsel agreed to withdraw the Bank Subpoena in exchange for Defendant's commitment to work with the Bank to determine whether it held information responsive to the narrower scope of information Plaintiffs claim they were actually seeking. Plaintiffs' counsel then abruptly "changed his mind" without explanation and, despite admitting that the information he sought was far narrower than the scope of the Subpoena as written, insisted on requiring Defendant to seek this Court's review. All this, despite the fact that the Court provided clear guidance to the Parties in resolving the One Inc. Subpoena that undifferentiated financial account information like that sought in the Bank Subpoena was not within the scope of discovery given the allegations of the Complaint. Because Plaintiffs have now significantly narrowed the scope of the putative class, it is even more clear that the information sought in the Subpoena as written is irrelevant and overbroad.

The Court should grant HMAS' Motion and enter an order quashing the Subpoena or, alternatively, modifying or limiting the scope of the Subpoena and entering a protective order, as it did previously with the One Inc. Subpoena. Plaintiffs' sole claim is an alleged breach of contract based on HMAS' change in the method by which it paid claims from the MRC card to direct payment. In resolving

the issues with respect to the One Inc. Subpoena, the Court provided the Parties guidance on the scope of discovery, and made clear that although information concerning One Inc.'s processing of the MRC payments for HMAS and HMAS' commitments under the HMAS plan was discoverable, Plaintiffs were not entitled to financial account information unconnected to the MRC program or the HMAS' plan. Plaintiffs' Subpoena to the Bank completely ignores the Court's guidance: It is a global, undifferentiated request for any and all HMAS account information held by the Bank, whether or not the information relates to the MRC program or to any HMAS plan. Further, it is unlimited to the class representatives or any putative class. As Defendant explained to Plaintiffs' counsel in the meet and confer, the Bank had no involvement in the MRC program, or any HMAS plan. The Bank simply holds certain commercial checking and deposit accounts for HMAS, and does not hold or perform an accounting of HMAS memberships, cancellations or terminations, and does it not account for, calculate or record forfeiture amounts for HMAS. Thus, the Bank records fall into the same category of general wide-ranging financial data that this Court made clear would not be permissible discovery.

Even assuming that the Subpoena may have been enforceable with respect to the original Complaint, the scope of Plaintiffs' claims has been significantly narrowed: Plaintiffs no longer seek to represent all persons who had a Primary Holder Contract with HMAS, but only the 2,226 Members that terminated their membership between October 12, 2023 and July 7, 2025. A request for *all* of HMAS' financial account information held by the Bank is by definition overbroad and seeks

the production of documents irrelevant to Plaintiffs' claims, requests sensitive customer information without customer consent, and improperly seeks HMAS' financial information. As done with the One Inc. Subpoena, Plaintiffs are requiring the parties hash through these issue once again, like *déjà vu*, despite the Court's prior guidance about financial records and despite the August 22 agreement reached at the meet and confer.

"A motion for a protective order may be made by any party and such party may seek a Rule 26 (c) protective order if it believes its own interest is jeopardized by discovery sought from a third person." *Steel Dust Recycling, LLC v. Robinson*, No. 4:19-CV-02818, 2023 WL 4946533, at *2 (S.D. Tex. Mar. 30, 2023). (internal quotation marks and citation omitted). "A protective order … is warranted if the movant shows good cause to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Stemmons Enter., L.L.C. v. Fisker, Inc.*, No. 4:22-CV-01487, 2023 WL 7545223, at *1 (S.D. Tex. Nov. 13, 2023) (internal quotation marks and citation omitted). "The movant bears the burden of showing that a protective order is necessary…." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citation omitted).

### III. ARGUMENT

A.   **Plaintiffs Reneged on the Parties' Agreement to Resolve the Issues Underlying this Motion Without Explanation, Unnecessarily Requiring Court Intervention.**

In the first meet and confer, Plaintiffs' counsel agreed to withdraw the Subpoena while the Parties worked with the Bank on a narrower scope, consistent

with his claim that he only wished to verify certain information concerning forfeitures contained in Defendant's interrogatory responses. *See* **Exhibits B, E, G.** Then, without explanation, counsel "changed his mind" and insisted on enforcing a knowingly overbroad Subpoena and requiring Defendant to file this Motion. *See* **Exhibits I and K.**

The parties have an obligation to meet and confer in good faith in an attempt to resolve a protective order dispute without Court action. Rule 26(c)(1), Fed. R. Civ. P. This obligation means little if counsel for a party agrees to resolve a discovery dispute in an extensive meet and confer, and then unilaterally reneges on that agreement without explanation and without notice to the other party. Here, Plaintiffs' counsel agreed to resolve the issues regarding Defendant's objections to the Subpoena without requiring Court intervention. Plaintiffs' counsel agreed to recall or withdraw the Subpoena and, in exchange, Defendant's would work with the Bank to determine whether the Bank possessed records sufficient to verify the veracity of certain discovery responses by Defendant. But, before that confirmation could be made and without the Subpoena being recalled as agreed on August 22, Plaintiffs' counsel "changed his mind." Even though supposedly represented to the Bank and to Defendant that he was seeking a narrower scope of information, Plaintiffs' counsel at the same time insisted on enforcement of the Subpoena *as written*, refused to work out a reasonable limitation, refused to provide any explanation for the retraction of the agreement, refused any request to revise the Subpoena or adjust the response date to afford the Parties and the Bank the opportunity to work through the issues.

At the end of the second meet and confer, Plaintiffs' counsel made clear that it would not consider any alternative short of enforcing the Subpoena "as written," and that the choice Defendant had if they did not want the Bank to provide the broad undifferentiated documents and information sought in it is to file this Motion to contest it. Surely, good faith requires counsel to explain the changed circumstances that reasonably excuse their "change of mind." Surely, good faith also requires counsel for a party, in an attempt to see if a Motion for Protection can be avoided, discuss the breadth of a subpoena and provided a cogent explanation and legal basis justifying same. But none of that was forthcoming from Plaintiffs' counsel, other than to say that he was "sorry about the about face." *See* **Exhibit K.**

Plaintiffs' counsel stymied Defendant's effort to resolve the dispute over the Subpoena and stonewalled the meet and confer process, reneging on agreements reached and then steadfastly refusing to agree to modify the scope of the Subpoena or to offer options to resolve the issue. Instead, counsel simply told Defendant that Plaintiffs were insisting on enforcement of an admittedly broad Subpoena and that Defendant will need to file a motion if it objected. In short, the two meet and confers accomplished nothing but (1) made clear that Plaintiffs' counsel would provide no explanation for their shifting positions; and (2) Defendant would have to file this Motion (the very action the meet and confer rules aim to avoid). Counsel's obligation to meet and confer in good faith demands more and their stratagem has resulted in needless costs by Defendant to file this Motion and the time and attention of this Court to resolve it.

B.   **The Subpoena Is Overly Broad Seeks the Production of Irrelevant Documents.**

Discovery at this stage is limited to class certification issues. *See* Scheduling Order for Class Certification [ECF No. 21]. Plaintiffs have already filed their Motion for Class Certification, three months before the date set in the Scheduling Order [ECF 46], and nothing in Plaintiffs' class certification motion explains how HMAS' bank account information and financial details would conceivably bear on the numerosity, commonality, adequacy, and typicality issues addressed in that motion. The Subpoena, as written, is beyond the scope of discovery in the Scheduling Order and should be quashed on that basis alone.

Even considering relevancy on the merits of Plaintiffs' Complaint, the Subpoena on its face seeks irrelevant documents and information. Plaintiffs allege that HMAS breached the HMA Primary Holder Contracts of each Plaintiff and those of members of the putative class by changing the method by which HMAS paid claims from the MRC to direct payment without independent or additional consideration. *See* ECF No. 1, at ¶¶ 6, 31, 34–40, 42, 43, 47, 48, 62, 77, 100, 104. In their Motion for Class Certification, Plaintiffs further narrowed the scope of their claims by limiting the putative class to the 2,226 Members who terminated their membership between October 12, 2023 and July 7, 2025. Nevertheless, the Subpoena as written is not limited to information fairly narrowed to the Modified Class, but necessarily would hoover up (i) information regarding HMAS' financial transactions with non-Plaintiffs and individuals not within the scope of the Modified Class, and (ii) information regarding HMAS' financial interactions and business transactions wholly unrelated

13

to the HMAS Plan or the Primary Holder Contracts, exactly the kind of information the Court explained were beyond the relevant scope.

Plaintiffs have yet to explain how general banking and financial account information of HMAS held by the Bank is conceivably relevant to class certification or to any of the actual allegations of the Complaint. In the (second) meet and confer conference, counsel freely admitted as much, instead, suggesting that Plaintiffs should be able to collect all financial records held by the Bank on HMAS accounts so that they can pore over them to determine whether relevant documents exist. That is the textbook definition of a fishing expedition. Plaintiffs' Subpoena was required to be specific as to the information sought. Such specificity serves to prevent a subpoena from being converted into a license for a fishing expedition to see what may turn up. *See Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (internal quotation marks and citation omitted); Given that Plaintiffs' counsel admitted that the scope of the information sought is considerably narrower that the Subpoena as written—seeking to verify the dollar value of forfeitures for the Modified Class—the Subpoena on its face is clearly overbroad.

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case…." FED. R. CIV. P. 26(b)(1). Here, the Subpoena requests that the Bank produce: "[a]ny and all documents referring or

relating to accounts held by Health Matching Account Services, Inc. from October 1, 2023 and May 7, 2025."[1] There are no limits as to scope and no reference to any of the actual allegations of the Complaint or the (now narrower) scope of the Modified Class. Thus, HMAS objects to the Subpoena as overly broad in scope and seek the production of documents irrelevant to Plaintiffs' claim (i.e., breach of contract only with respect to the Modified Class). Even if the information held by the Bank might conceivably be relevant to the Modified Class claims, information held with respect to any other HMAS member or former member is completely irrelevant and Plaintiffs' attempt to scoop up this information in an undifferentiated data dump is on its face improper.

In resolving the issues with respect to the One Inc. Subpoena (which processed payments for the MRC program), the Court provided the Parties guidance on the scope of discovery and made clear that although information concerning One Inc.'s processing of the MRC payments for HMAS and HMAS' commitments under the HMAS plan was discoverable, Plaintiffs were not entitled to HMAS general day-to-day financial account information unconnected to the MRC program or the HMAS' plan. *See* ECF Minute Entry May 28, 2025.

Plaintiffs' Subpoena to the Bank completely ignores the Court's guidance: It is a global, undifferentiated request for any and all HMAS account information held by the Bank, whether or not the information relates to the MRC program or to any HMAS plan. As Defendant explained to Plaintiffs' counsel in the meet and confer, the Bank was <u>never</u> involved the MRC program, or any HMAS plan. Unlike HMAS'

---

[1] **Exhibit A**, p. 1.

business relationship with One Inc., the entity at issue with respect to Plaintiffs' first Subpoena, the Bank did not and does not maintain any debit or other card for HMAS in connection with HMAS' plan, and has no involvement in processing enrollments, claims reimbursements, cancellations, or forfeitures with respect to any HMAS member. The Bank simply holds certain commercial checking and deposit accounts for HMAS, and does not hold or perform an accounting of HMAS memberships, cancellations or terminations, and does not account for, calculate or record forfeiture amounts for HMAS. HMAS has a banking relationship with the Bank and maintains certain commercial checking, payroll, and other accounts. Because Plaintiffs' breach of contract claims relates solely to terminated members for a finite time period, information on all other issues is wholly irrelevant and is an improper invasion of HMAS' confidentiality with respect to its financial records and nonparties identified within them without any basis in law. The information sought is completely irrelevant to any claims asserted in the Complaint and with respect to the Modified Class.

In the lead-up to the filing of this Motion, Plaintiffs' counsel has repeatedly voiced that the relevant information they seek is substantially narrower than the Subpoena as written (although Plaintiffs never narrowed its scope and rejected narrowing it at the second meet and confer). This, while, at one point, counsel agreed to narrow the scope of the subpoena, but then, out of nowhere and without prior notice or explanation, they "changed their minds." Rather than working to adjust the scope

of the Subpoena to match their stated requests, they effectively dismissed the meet and confer process and insisted on requiring Defendant to file this Motion.

Given their admission that the information sought is substantially narrower than the scope of the Subpoena as written, at the very least, counsel had an obligation to narrowly tailor the requests to avoid unnecessary expenses and Court involvement. *See Crosby*, 647 F.3d at 264  ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (internal quotation marks and citation omitted); *Topsoe, Inc. v. Casale US, Inc.*, No. 3:24-CV-00033, 2025 WL 227344, at *1 (S.D. Tex. Jan. 17, 2025) (same). However, after first suggesting it might narrow the scope, counsel reversed course and abandoned any effort to tailor the request to the information they claim they are seeking.

By Plaintiffs' counsel's own admission, the Subpoena as written is the very definition of an overreaching fishing expedition that is not proportionate to the needs of the lawsuit in the hope that sifting through HMAS' financials might lead to relevant evidence. *See Blanchard v. Circle K Stores, Inc.*, C.A. No. 6:19-CV-00856, 2021 WL 4255407, *2 (W.D. La. Sept. 17, 2021) (granting motion to quash seeking discovery of "any and all banking records" that bank may have pertaining to Plaintiff, "which appears to the Court as a sweeping discovery request not pointed to any specific issue but, rather, propounded with the hope of finding something prejudicial."). For this reason alone, the Subpoena should be quashed as written, and Plaintiffs should directed to issue a revised Subpoena within appropriate limits. This was exactly what Plaintiffs had already agreed to on August 22, but today Defendant

17

must come to this Court for relief because Plaintiffs' counsel backed out of that agreement.

As noted above, Plaintiffs' sole claim is for an alleged breach of the Primary Holder Contracts based on the change in the method of payment from debit cards to direct pay in October 2023, and Plaintiffs further narrowed the scope of the case to the Modified Class of terminated members. Given this narrow claim and scope, it strains credulity to suggest that all banking accounts held by HMAS could plausibly relate to Plaintiffs' breach of contract claim. Nor could all transactions between the Bank and HMAS be conceivably relevant to Plaintiffs' lone claim. Indeed, Plaintiffs' counsel has admitted as much in the first meet and confer, stating that the relevant information he seeks in the Subpoena is financial data to confirm the accuracy of two statements in Defendant's interrogatory responses concerning the dollar amounts of contributions and matching forfeited by the Modified Class as a result of their termination. *See* **Exhibits B, G**. On its face, the Subpoena is well beyond the bounds of what Plaintiffs claim is the relevant evidence sought.

Accordingly, HMAS is forced to respectfully request that the Court enter an order quashing the Subpoena; alternatively, if the Court does not quash the Subpoena, that it enter a protective order modifying the Subpoena consistent with the Court's guidance with respect to the One Inc. Subpoena such that the request set forth therein seeks only the production of documents that Plaintiffs claim they seek: documents that would demonstrate the value of forfeited amounts for the Modified Class during the stated class period, to the extent such documents are held by the

Bank. If such documents exist, they should be designated "Attorneys Eyes Only" consistent with the Court's guidance with respect to the One Inc. Subpoena.

C.   **The Subpoena Seeks Information Concerning Individuals Other than the Plaintiffs and the Modified Class and Is Not Reasonably Tailored to the Information They Claim they Seek.**

HMAS also objects to the Subpoena to the extent that it is likely to result in production of information of its current or former Members outside the Modified Class, and protected health information ("PHI") of Members. Because the Subpoena seeks the production of all documents with respect to "accounts held by [HMAS]," the Subpoena necessarily seeks the production of sensitive information concerning HMAS' individual current and members that may be intermingled in check references and similar data. HMAS' accounts are standard checking and saving account with check registers, deposits, cancelled checks and the like. None of the records are sorted or maintained by identified Members, whether current or terminated, and certainly not assorted within any time frame sought by Plaintiffs. The request will also necessarily result in production of HMAS financial records and transactions with third parties that are wholly unrelated to the HMAS plan. Plaintiffs' proposed unbounded search of HMAS' bank records, irrespective of any articulated relevancy, is not permitted by the Rules.

Moreover, to the extent that any checks or other instruments submitted to the Bank has individually identifiable and sensitive information concerning HMAS' members and former members, including those that are not within the Modified Class (e.g., members' names, addresses, phone numbers, PHI, etc.). Even if the Court were

to find the Subpoena otherwise enforceable documents and communications containing such sensitive information should not be produced without the consent of the individual members or former members. *See Anadarko Petroleum Corp.*, 2020 WL 4937122, at *2 ("[A] party has standing to move for a protective order pursuant to Rule 26(c) ... even if the party does not have standing pursuant to Rule 45(d).") (internal quotation marks and citation omitted). Further, any documents and communications containing individual members' sensitive information are irrelevant to Plaintiffs' breach of contract claim, particularly with respect to individuals not within the Modified Class. Accordingly, HMAS respectfully requests that if the Court does not quash the Subpoena in its entirety, that a protective order be entered and that the Subpoena be modified to exclude the production of HMAS' members' sensitive information.

D.    **The Subpoena Improperly Seeks the Production of HMAS' Financial Information Unrelated to the MRC plan or any HMAS plan.**

Last, HMAS objects to the Subpoena to the extent it seeks the undifferenced production of HMAS' financial records and information. Specifically, the Subpoena requests that the Bank produce:

> Any and all documents referring or relating to accounts held by Health Matching Account Services, Inc. from October 1, 2023 and May 7, 2025.

By definition, this would include financial information (e.g., HMAS' bank account information) maintained by the Bank for any of its business purposes, including those unrelated to operation of the HMAS program. As noted above, Plaintiffs assert a single claim for breach of contract based on the change from debit card to direct pay

and seek only contractual-based damages in connection therewith. Plaintiffs' Complaint does not request an award of punitive damages, and it is clear that such damages are not available for a breach of contract claim such as this one. *See Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012) ("While exemplary or punitive damages may generally be awarded for torts involving malicious or grossly negligent conduct, they are not available for breach of contract claims.") (citation omitted).

Because punitive damages are not recoverable here, Plaintiffs are simply not entitled to the discovery of HMAS' financial information. *See, e.g., In re Islamorada Fish Co. Texas, L.L.C.*, 319 S.W.3d 908, 912 (Tex. App.—Dallas 2010, orig. proceeding) ("[W]hen punitive damages clearly are not recoverable, information about net worth is not relevant and, as a result, not discoverable."); *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (citation omitted) ("Information regarding net worth is discoverable in cases in which punitive or exemplary damages may be awarded.") (internal quotation marks and citation omitted). Accordingly, HMAS respectfully requests that the Court enter an order quashing the Subpoena or, alternatively, that a protective order be entered and that the Subpoena be modified to exclude the production of HMAS' financial information.

Consistent with the Court's ruling on the One Inc. Subpoena, responsive information, if any, would be any contracts between HMAS and the Bank regarding the MRC plan or the HMAS Plan, those documents referring to HMAS' financial

obligations to fund the Plan and the like (such information does not exist, but Plaintiff is entitled to a confirmation from the Bank to that effect).

## IV. CONCLUSION

For these reasons, HMAS respectfully requests that its Motion be granted and that the Court enter an order quashing the Subpoena or, alternatively, modifying the Subpoena and entering a protective order as set forth herein.

Dated: September 5, 2025.          Respectfully submitted,

By: */s/ Dennis P. Duffy*
**Christopher C. Pappas**
Texas Bar No. 15454300
S.D. Tex. Fed. No. 5966
**Dennis P. Duffy**
Texas Bar No. 06168900
S.D. Tex. Fed. No. 10502
**Andrea M. Johnson**
Texas Bar No. 10679600
S.D. Tex. Fed. No. 1285
KANE RUSSELL COLEMAN LOGAN PC
5151 San Felipe, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7400
Fax: (713) 425-7700
cpappas@krcl.com
dduffy@krcl.com
ajohnson@krcl.com

***Counsel for Defendant Health Matching Account Services, Inc.***

## CERTIFICATE OF CONFERENCE

I certify that on August 22, 2025, counsel for Defendant conferred with Plaintiffs' counsel of record regarding Plaintiffs' Subpoena to Plains Capital and Plaintiffs' counsel agreed to recall or withdraw the Subpoena in exchange for Defendant counsel's commitment to confirm with Plains Capital whether and to what extent it possessed information that would enable confirmation of the accuracy of information contained in Attachments 2 and 5 to Defendant's Responses to Plaintiffs' First Set of Interrogatories. *See* Exhibits B and C. On August 26, 2025, Alexander Loftus, one of Plaintiffs' counsel confirmed that they had "changed their mind," about withdrawing the Subpoena and that would be working with Plains Capital's counsel about providing a written statement to Plains Capital narrowing the scope of what they were requesting. *See* Exhibits E & G. However, at the second meet and confer session on August 29, 2025, Carl Johnson, another of Plaintiffs' counsel, confirmed that, despite prior statements concerning narrowing the scope, they were insisting on enforcement of Subpoena as written. *See* Exhibit I. Mr. Johnson acknowledged that they had agreed to resolve the issues at the August 22 meet and confer by recalling or withdrawing the Subpoena, he said that they "changed their minds," and offered no other explanation despite repeated requests. When I sent an email after the meet and confer to confirm Mr. Johnson's position at the second meet and confer that they were no longer abiding by the parties agreement reached on August 22 (*see* Exhibit J),  Mr. Loftus wrote back a few minutes later, stating:

I think this was addressed wrong.

Yes, your apparent panic over the subpoena gave me pause. Carl and I discussed the extreme response to a routine subpoena and determined it was best for our clients to let the subpoena process play out in the ordinary course.

**I'm sorry for the about face** but why hire smart people if I don't listen to them?

*See* Exhibit K.

*/s/ Dennis P Duffy*
Dennis P. Duffy

## CERTIFICATE OF SERVICE

This is to certify that on the 5th day of September, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF notification system on all counsel of record as follows:

Alexander Loftus
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
alex@loftusandeisenberg.com

James Crewse
CREWSE LAW FIRM, PLLC
5919 Vanderbilt Avenue.
Dallas, Texas 75206
jcrewse@crewselawfirm.com

/s/ Dennis P Duffy
Dennis P. Duffy