# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

BOBBIE POPE, ET AL.,
*on behalf of themselves and others similarly situated,*

        Plaintiffs,

v.

HEALTH MATCHING ACCOUNT SERVICES, INC.

        Defendant.

Case No. 4:24-cv-04611
Judge Ellison

## THE UNITED STATES' MOTION TO INTERVENE AND FOR A LIMITED STAY OF DISCOVERY AND MEMORANDUM IN OPPOSITION TO <u>PLAINTIFFS' EMERGENCY MOTION TO APPOINT RECEIVER</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.   THE COURT SHOULD PERMIT THE UNITED STATES TO INTERVENE ................... 5

   A. The United States Meets the Requirements to Intervene as a Matter of Right .................. 6

     1.   The Government's Motion Is Timely .......................................................... 6

     2.   The Government Has a Related Interest ...................................................... 8

     3.   The Government's Interest Will Be Impaired if Intervention Is Denied ..................... 9

     4.   No Existing Parties Adequately Represent the Government's Interests ....................... 9

   B. Alternatively, the United States Should Be Permitted to Intervene Under Rule 24(b) .... 10

II.  PLAINTIFFS' MOTION TO APPOINT A RECEIVER SHOULD BE DENIED ............... 12

   A. Legal Standard ....................................................................................................... 13

   B. Plaintiffs Fail to Meet Each Factor for Appointment of a Receiver ............................... 15

     1.   Plaintiffs Do Not Have a Judgment Against HMA ...................................... 15

     2.   Less Drastic Legal Remedies Are Already in Place ...................................... 18

     3.   The Burden of a Receiver Far Outweighs Any Benefits ................................ 19

III. THE COURT SHOULD STAY DEPOSITION DISCOVERY THE INSTANT CASE FOR
    SIX MONTHS ................................................................................................................. 21

   A. The Extensive Overlap Between the Civil and Criminal Matters Supports a Stay .......... 22

   B. A Stay Is Warranted Because the Parallel Criminal Investigation Is Ongoing ................ 23

   C. Because Plaintiff Does Not Oppose the Government's Motion, the Plaintiffs' Interests
     Favor a Stay. ........................................................................................................... 24

   D. Defendant's Interests Favor a Stay .......................................................................... 24

   E. The Court's Interest in Judicial Economy Favors a Stay .............................................. 24

   F. The Public's Interest Weighs in Favor of a Stay ........................................................ 25

## **TABLE OF AUTHORITIES**

**Cases**

*Accordant Commc'ns, LLC v. Sayers Constr., LLC,*
    No. 1:19-CV-00401-LY, 2020 WL 7496657 (W.D. Tex. Apr. 7, 2020) ..............................15

*Alcala v. Texas Webb Cty.,*
    625 F. Supp. 2d 391 (S.D. Tex. 2009) ................................................................................. 22

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ............................................................................................... 10

*Cabatech, LLC v. Nextlight, LLC,*
    No. 1:22-CV-59, 2023 WL 2643795 (S.D. Ohio Mar. 27, 2023) ......................................... 16

*Campbell v. Eastland,*
    307 F.2d 478 (5th Cir. 1962) ..................................................................................... 9, 10, 21

*Capital Funding, LLC v. TLTX Holdings, LLC,*
    No. 2:20-CV-00005-Z, 2020 WL 264106 (N.D. Tex. Jan. 17, 2020).............................. 15, 19

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.,*
    No. 1:19-CV-133, 2020 WL 13460831 (S.D. Ohio June 19, 2020)................................. 16, 17

*Cunningham v. Brown,*
    265 U.S. 1 (1924) ........................................................................................................... 3, 20

*Domain Prot., LLC v. Sea Wasp, LLC,*
    No. 4:18-CV-792, 2019 WL 4887139 (E.D. Tex. Oct. 3, 2019)........................................... 19

*Dominguez v. Hartford Fin. Servs. Group, Inc.,*
    530 F.Supp.2d 902 (S.D. Tex. 2008) ........................................................................ 8, 22, 23

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ................................................................................................... 7

*Entergy Gulf States La., LLC v. U.S. EPA,*
    817 F.3d 198 (5th Cir. 2016) ...................................................................................... 6, 9, 10

*Ettorre v. Russo's Westheimer, Inc.,*
    677 F. Supp. 3d 644 (S.D. Tex. 2023) ................................................................................. 13

*FDIC v. Ernst & Young, LLP,*
    No. 2:20-CV-1259, 2020 WL 3960345 (E.D. La. July 13, 2020) ........................................... 8

*Firequip, Inc. v. Precision Frac, LLC,*
    No. 7:17-CV-73-DC, 2023 WL 3273117 (W.D. Tex. Mar. 28, 2023).................................... 19

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................. 16, 17

*Guidry v. Bank of LaPlace*,
   954 F.2d 278 (5th Cir. 1992) ........................................... 3

*In re Bayou Grp., LLC*,
   564 F.3d 541 (2d Cir. 2009) ........................................ 17

*In re Fredeman Litig.*,
   843 F.2d 821 (5th Cir. 1988) ................................... 14, 15

*In re Grand Jury Subpoena*,
   866 F.3d 231 (5th Cir. 2017) ....................................... 21

*In re Lease Oil Antitrust Litig.*,
   570 F.3d 244 (5th Cir. 2009) .................................. 6, 8, 9

*In re Monterey Equities-Hillside*,
   73 B.R. 749 (Bankr. N.D. Cal. 1987) ............................. 17

*In re Petters Co., Inc.*,
   401 B.R. 391 (Bankr. D. Minn. 2009) ............................ 17

*John Doe No. 1 v. Glickman*
   256 F.3d 371 (5th Cir. 2001) ..................................... 6, 10

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
   884 F.2d 185 (5th Cir. 1989) ...................................... 11

*Librado v. M.S. Carriers, Inc.*,
   No. 3:02-cv-2095D, 2002 WL 31495988 (N.D. Tex. Nov. 5, 2002) ............ 22

*Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*,
   153 F.3d 1289 (11th Cir. 1998) ................................ 13, 14

*Netsphere, Inc. v. Baron*,
   703 F.3d 296 (5th Cir. 2012) ......................... 14, 15, 16, 18

*Newby v. Enron Corp.*,
   443 F.3d 416 (5th Cir. 2006) ..................................... 11

*PNC Bank, N.A. v. 2013 Travis Oak Creek GP, LLC*,
   No. 1:17-CV-584-RP, 2018 WL 6433312 (W.D. Tex. Sept. 27, 2018) ............ 18

*Pusey & Jones Co. v. Hanssen*,
   261 U.S. 491 (1923) .............................................. 16

*Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*,
   415 B.R. 391 (D. Minn. 2009) .................................... 17

*Santibanez v. Wier McMahon & Co.*,
   105 F.3d 234 (5th Cir. 1997) ............................................................... 14

*Se. Recovery Grp. v. BP America, Inc.*,
   278 F.R.D. 162 (E.D. La. 2012) ................................................... *Passim*

*SEC v. Mutuals.com, Inc.*,
   No. 3:03-CV-2912-D, 2004 WL 1629929 (N.D. Tex. July 20, 2004) ................... 8, 9, 11, 24

*SEC v. Offill*,
   No. 3:07-CV-1643-D, 2008 WL 958072 (N.D. Tex. Apr. 9, 2008)...................22, 23, 24, 25

*SEC v. Stanford Int'l Bank, Ltd.*,
   No. 3:09-CV-298-N, 2010 WL 11492395 (N.D. Tex. Jan. 5, 2010).......................... 22, 24, 25

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ................................................................ 6

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ........................................................................ 17

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ........................................................ 6, 7, 10, 11

*Tajonera v. Black Elk Energy Offshore Operations, LLC*,
   No. 2:13-CV-366, 2015 WL 893447 (E.D. La. Mar. 2, 2015)...................... *Passim*

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ................................................................ 8

*U.S. v. Payment Processing Center, LLC*,
   435 F.Supp.2d 462 (E.D. Pa. 2006) ........................................................ 4

*United States v. Durham*,
   86 F.3d 70 (5th Cir. 1996) ................................................................ 20

*United States v. HMA, et al.*,
   No. 4:25-00814-CV-W-RK (W.D. Mo.) ...................................... *Passim*

*United States v. Mellon Bank, N.A.*,
   545 F.2d 869 (3d Cir. 1976) ................................................................25

*Warren v. Geller*,
   No. 2:11-CV-2282, 2013 WL 1455688 (E.D. La. Apr. 9, 2013) ...................... 22, 25

*Whitney Nat'l Bank v. Air Ambulance ex rel. B & C Flight Mgmt., Inc.*,
   No. 4:04-CV-2220, 2007 WL 1468417 (S.D. Tex. May 18, 2007) ...................... 22

## Statutes

18 U.S.C. § 1345 ............................................................... *Passim*

The United States of America, by and through the undersigned attorneys, respectfully: (1) seeks leave to intervene in this action under Rule 24 of the Federal Rules of Civil Procedure; (2) opposes Plaintiffs' extraordinary request that this Court appoint a receiver in a civil class action in which no finding of liability has yet been made and to assert jurisdiction over assets already restrained in another proceeding; and (3) moves for a limited stay of discovery, specifically depositions, in the instant case.  The government's criminal investigation, the civil proceeding initiated by the government under the Anti-Fraud Injunction statute, 18 U.S.C. § 1345, in the Western District of Missouri (the "1345 Proceeding"),[1] and the breach of contract class action before this Court (the "Contract Proceeding") all involve Health Matching Account Services, Inc. ("HMA"), and, broadly speaking, allegations that HMA defrauded its members through wire fraud (as alleged in the government's complaint), or breach of contract (as alleged by civil Plaintiffs). HMA, Pet Health Matching Account Services, Inc. ("PHMA"), and two of their owners, Regina Gorog and Elliott Gorog (collectively, "Defendants"), are named defendants in the 1345 Proceeding, and HMA is the named defendant in the Contract Proceeding.

The United States seeks to intervene in the Contract Proceeding to ensure that HMA's members are not further defrauded and that the government may continue to seek equitable relief in the public interest and to protect the integrity of its ongoing criminal investigation.  The government has restrained HMA and PHMA's bank accounts to preserve the remaining funds and has created an orderly process for HMA members to report their experiences with HMA and losses to the government.[2]

---

[1] Case No. 4:25-00814-CV-W-RK (W.D. Mo.).

[2] *See* https://www.justice.gov/criminal/case/united-states-v-health-matching-account-services-inc-hma-pet-health-matching-account.

It is an unfortunate truth that when a Ponzi scheme collapses, the investors whose funds were currently held by the fraudulent enterprise are in a fundamentally worse position than investors who recouped their investment in the earlier phase of the scheme. And in this scheme, the remaining HMA members are not necessarily the most financially impacted victims due to HMA's forfeiture provision requiring members who terminated their relationship with HMA to forego their account balance. A receivership at this juncture, however, does not mitigate these unfortunate realities. In addition, the appointment of a receiver would result in substantial costs that would be borne by the victims by depleting the assets that may be subject to restitution and forfeiture in the future.

By contrast, the injunctive relief already obtained through the 1345 Proceeding preserves assets without the unnecessary cost of receivership and allows the criminal investigation to move forward unimpeded, serving the public interest and the interest of all HMA members.

## **BACKGROUND**

HMA offered customers a "health matching account" that was a health savings account-like product. HMA members sent in monthly contributions that, over time, were supposed to be matched by HMA, enabling the member to earn "up to $2 in medical matching or more for every $1 above and beyond" what the member contributed.[3] If an HMA member made a claim against their account balance, they could rebuild their balance. But if a member ceased contributing to her account, she would no longer be able to use her health matching account and would forfeit the account balance to HMA.[4] HMA members complained that HMA changed how the product worked in ways that were detrimental to members, that HMA delayed payment to the members'

---

[3] 1345 Proceeding, Dkt. 1, Complaint ¶ 54.
[4] *Id*. at ¶ 15.

medical providers or reimbursement to the members themselves, and that HMA was, in reality, a Ponzi scheme.[5]

In November 2024, an HMA victim contacted the Federal Bureau of Investigation, and shortly afterwards, the FBI's Kansas City field office opened an investigation into allegations against HMA, PHMA, and associated individuals. The federal criminal investigation is ongoing.

On November 22, 2024, Plaintiffs filed the instant suit against HMA on behalf of a putative class. Dkt. No. 1 ("Compl."). Plaintiffs allege that HMA breached their contracts with customers by unilaterally changing the terms of the agreement. Dkt. No. 1. Compl. ¶ 100. Plaintiffs' complaint withstood a motion to dismiss, and the parties submitted a joint case management plan that set the close of discovery for May 16, 2026. Dkt. No. 16 at 4. On April 3, 2025, the Court entered a scheduling order for class certification. Dkt. No. 21 at 2. The order specified that "[f]ollowing an Order from this Court granting or denying class certification, this Court will schedule a status conference to discuss entering a Scheduling Order related to merits discovery, summary judgment briefing and any trial dates and pre-trial deadlines." *Id*. The parties to the Contract Proceeding subsequently jointly requested to stay proceedings in light of their planned mediation. Dkt. No. 56. The Court granted their motion. Dkt. No. 59.

On October 17, 2025, the United States filed a complaint under 18 U.S.C. § 1345, the Anti-Fraud Injunction statute, seeking to halt HMA's ongoing wire fraud scheme. *United States v. HMA et al*., Case No. 4:25-00814-CV-W-RK (W.D. Mo.), Dkt. No. 12 (attached hereto as Exhibit A). Section 1345 authorizes "injunctive relief to enjoin specified ongoing or contemplated crimes" and "empowers courts to enter restraining orders" and to take other action as "is warranted to

---

[5] "Ponzi was the last name of the swindler in *Cunningham v. Brown*, 265 U.S. 1 (1924). The term has come to be used to describe a scheme whereby the swindler uses money from later victims to pay earlier victims." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 280 n.1 (5th Cir. 1992).

prevent a continuing and substantial injury to the United States or to any person or class of person for whose protection the action is brought." *U.S. v. Payment Processing Center, LLC*, 435 F.Supp.2d 462, 464 (E.D. Pa. 2006). Consequently, "civil suits under § 1345 are often used to preserve the status quo during a lengthy parallel criminal probe." *Id*. (citing S. Rep. No. 225, 98th Cong., 2d Sess. 401-02, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3539 (recognizing criminal investigation of fraud schemes "often takes months, if not years," while innocent people "continue to be victimized")).

The District Court for the Western District of Missouri found that the United States had made a sufficient showing that "absent emergency injunctive relief, Defendants will both continue to solicit new members who will begin to make new contributions to the fraudulent healthcare savings plan-like programs and will continue to collect contributions by existing members and may then dissipate, alienate, and conceal the proceeds of the fraudulent scheme" and entered a temporary restraining order (the "TRO") on October 22, 2025. Case No. 4:25-00814-CV-W-RK (W.D. Mo.), Dkt. No. 11 at 1–2 (attached hereto as Exhibit B). The Western Missouri District Court further found that emergency injunctive relief was necessary "to protect the public interest as expressly authorized by the Anti-Fraud Injunction Statute" and enjoined Defendants from soliciting new members and processing payments from existing HMA and PHMA members; it also restrained multiple bank accounts, enjoined Defendants from using HMA or PHMA assets, enjoined Defendants from destroying or otherwise discarding records (including electronically stored information), and ordered two internet-service providers to take steps to prevent the public from accessing Defendants' websites. *Id*.

On October 23, 2025, the FBI executed a search warrant at HMA's corporate office. The same day, FBI agents served Regina Gorog, two financial institutions, and two web-services

providers with the TRO.[6]  HMA and PHMA's bank accounts and Stripe accounts are restrained, and their websites have been taken down.[7]

On October 28, 2025, Plaintiffs made an emergency application to this Court, requesting the appointment of a receiver who Plaintiffs expect to hire a team of claims processors, IT specialists, forensic accountants, medical consultants, and legal counsel to take control of HMA's assets and operations, stay competing litigation, and liaise with the government.  Dkt. No. 61-1 at 19–25.  In subsequent filings, Plaintiffs expressed their expectation that the proposed receiver will "marshal, liquidate, and distribute" the assets frozen by the TRO in the 1345 Proceeding.  Dkt. No. 63 at 3; Dkt. No. 70.

On October 30, 2025, the District Court for the Western District of Missouri granted the joint motion by the government and Regina Gorog to extend the TRO until November 19, 2025, the date of the preliminary injunction hearing in the 1345 Proceeding.  Case No. 4:25-00814-CV-W-RK (W.D. Mo.), Dkt. No. 15 (attached hereto as Exhibit C).  The United States' criminal investigation into HMA is ongoing.

## ARGUMENT

## I.    THE COURT SHOULD PERMIT THE UNITED STATES TO INTERVENE

Federal Rule of Civil Procedure 24 provides for intervention in civil cases as a matter of right and as a matter of grace.  This Court should allow the United States to intervene in this case as a matter of right; in the alternative, this Court should exercise its discretion under Rule 24(b) to permit intervention.

---

[6] Mr. Gorog was served on October 28, 2025.
[7] Stripe is a payment-processing platform that can collect consumer payments for businesses and allow the business to transfer the payment to its bank account.  HMA used Stripe to collect payments from members.

**A.      The United States Meets the Requirements to Intervene as a Matter of Right**

To intervene as a matter of right the applicant must demonstrate that: (1) its motion is timely; (2) it has an interest related to the action in which it seeks to intervene; (3) its interest would be impaired or impeded by the case; and (4) its interest is not adequately represented by existing parties.  *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009).  While failure to satisfy any of the requirements precludes intervention of right, "the rule 'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'"  *Entergy Gulf States La., LLC v. U.S. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil*, 570 F.3d at 248).

**1.      <u>The Government's Motion Is Timely</u>**

The first factor, timeliness, is determined by its own four-part test established in *Stallworth v. Monsanto Company*: (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene; (2) the extent of prejudice to existing parties from allowing late intervention; (3) the extent of prejudice to the would-be intervenor if the petition to intervene is denied; and (4) any unusual circumstances.  558 F.2d 257, 264–66 (5th Cir. 1977).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner."  *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Here, the government easily satisfies *Stallworth*'s requirements.  The government seeks to intervene to protect the public interest with respect to Plaintiffs' emergency motion, which was filed less than a week ago, and to protect the interests of its ongoing criminal investigation with respect to discovery, specifically depositions, which the government presumes have not yet begun as class certification is unresolved and there is no operative scheduling order governing merits

6

discovery. While Rule 24's timeliness requirement is "relative, not absolute," *Stallworth*, 558 F.2d at 266, motions to intervene filed before entry of judgment "favor[] timeliness," *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996), a bar easily cleared here.

Second, the existing parties face no prejudice from delayed intervention as the government's motion is not late. Only prejudice that results from a delayed intervention, and not from the inconvenience of intervention in general, is a pertinent consideration under *Stallworth*'s second factor. *Edwards*, 78 F.3d at 1002 (citing *Stallworth*, 558 F.2d at 265). The government indicated its interest in Plaintiffs' emergency motion on the record the day after the motion was filed and indicated that it was considering filing a motion to intervene. With respect to intervention for a limited stay of discovery, the parties are not prejudiced by the government seeking to intervene and stay depositions at this time rather than some previous point in litigation. Merits discovery is far from closed (and, as discussed below, currently stayed), and the government is seeking to intervene less than two weeks after its criminal investigation with respect to HMA became overt.

Third, the government would face prejudice if its motion to intervene is denied. Courts in the Fifth Circuit have found that the government may be prejudiced if it is prevented from intervening in civil matters where parallel criminal proceedings exist. *See, e.g.*, *Tajonera v. Black Elk Energy Offshore Operations, LLC*, No. 2:13-CV-366, 2015 WL 893447, at *8 (E.D. La. Mar. 2, 2015) (finding that the third *Stallworth* factor weighed "in favor of a finding that the motion is timely" where the government's "criminal investigation is underway"). Similarly, here, in addition to prejudice to its criminal investigation, if the government is not permitted to intervene, Plaintiffs explicitly seek to set aside the relief the government has obtained in the 1345 Proceeding, which itself poses potential harm to prospective victims, discussed further below.

Finally, where "[s]ubstantial discovery and other preparation work remains to be done" in the civil matter and a criminal investigation is ongoing, "the substantial public interest in law enforcement investigations and the delicate current stage of the criminal matter are circumstances weighing in favor of a finding of timeliness." *Se. Recovery Grp. v. BP America, Inc.*, 278 F.R.D. 162, 168 (E.D. La. 2012).

## 2. The Government Has a Related Interest

To satisfy the second requirement of the Fifth Circuit's test, an intervenor must demonstrate that it has "a direct, substantial, legally protectable interest in the action." *In re Lease Oil*, 570 F.3d at 250. The Fifth Circuit has described its related interest determination as hinging on whether the intervenor "has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Group, Inc*., 530 F.Supp.2d 902, 906–907 (S.D. Tex. 2008). Where "evidence demonstrates that the civil action and the criminal investigation include identical subject matter, the United States has carried its burden to show it has a right to intervene pursuant to Rule 24." *Tajonera*, 2015 WL 893447, at *7 (citing *Se. Recovery Grp.*, 278 F.R.D. at 167).

Courts in the Fifth Circuit have repeatedly found that the government demonstrates a related interest under Rule 24 when its criminal investigations focus on the same activity at issue in civil proceedings. *See, e.g.*, *FDIC v. Ernst & Young, LLP,* No. 2:20-CV-1259, 2020 WL 3960345, at *4 (E.D. La. July 13, 2020) (finding a related interest where "the civil and criminal cases involve the same underlying subject matter—fraud allegedly perpetrated by individuals affiliated with First NBC"); *SEC v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929,

8

at *1 (N.D. Tex. July 20, 2004) (same). Here, the 1345 Proceeding against the Defendants, the Contract Proceeding, and the government's criminal investigation all revolve around HMA's conduct. In such circumstances, "[t]he Fifth Circuit has recognized the prosecution's interest in intervening in civil proceedings to stay discovery and protect a criminal investigation." *Tajonera*, 2015 WL 893447, at *7 (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).

### 3. The Government's Interest Will Be Impaired if Intervention Is Denied

Once an intervenor demonstrates that it has a related interest, it must show that its interest would be impaired if intervention is denied. *In re Lease Oil*, 570 F.3d at 247.

With respect to the 1345 Proceedings, the government has sought and obtained injunctive relief to halt an ongoing fraud and to restrain assets that may be subject to restitution and forfeiture in the future. The government has far more than a generalized preference that the steps it has taken to protect the public interest (and potential victims) during its ongoing criminal investigation not be undone or undermined.

With respect to its ongoing criminal investigation, and as discussed further below with respect to the government's request for a limited stay of discovery, both the interests of the government and of individuals who may be deposed in the Contract Proceeding will be impaired if intervention is denied. Permitting "the broad-ranging discovery planned by . . . civil parties" to go forward unimpeded would impair the government's ability to protect "its unique investigative and prosecutorial interests" with respect to ongoing investigations involving HMA, PHMA, and associated individuals. *Se. Recovery Grp.*, 278 F.R.D. at 167.

### 4. No Existing Parties Adequately Represent the Government's Interests

Finally, an intervenor must show that its interest is not adequately represented by the existing parties in the matter in which it seeks to intervene. *In re Lease Oil*, 570 F.3d at 247. "The

applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'"
*Entergy Gulf States La.*, 817 F.3d at 203 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014)).

The interests of the existing parties and the government are incongruous on a fundamental level.  The government "must represent the broad public interest," while non-governmental parties pursue their own discrete goals.  *Glickman*, 256 F.3d at 381.  While Plaintiffs seek to represent a class of HMA victims, the class is not certified.  In contrast, the Anti-Fraud Injunction statute explicitly authorizes action "to prevent a continuing and substantial injury to  . . . any person or class of persons for whose protection the action is brought."  18 U.S.C. § 1345(b).  And, of course, the "Fifth Circuit has recognized that the public interest in law enforcement efforts though criminal investigation and prosecution is substantial."  *Tajonera*, 2015 WL 893447 at *10 (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).

The Court should allow the government to intervene as of right to (1) oppose the emergency motion for a proposed receiver, whose work is explicitly envisioned as conflicting with the equitable anti-fraud relief that the government has preliminarily obtained and is seeking, and (2) seek a limited stay of discovery.

### B.    Alternatively, the United States Should Be Permitted to Intervene Under Rule 24(b)

If, for any reason, the Court denies the government's request to intervene as a matter of right, the Court should use its discretionary authority under Rule 24(b) to permit the government to intervene.  *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (the court may permit intervention based on its discretionary authority where the would-be intervenor shows that it has a claim or defense that shares with the main action a common question of law or fact).

In the Fifth Circuit, a court's decision to permit intervention under Rule 24(b)(1)(B) consists of two parts: first, "a threshold determination that the 'applicant's claim or defense and the main action have a question of law or fact in common,'" *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006), and second, an exercise of the court's discretion in determining whether to permit intervention. *Stallworth*, 558 F.2d at 269. Because district courts exercise "broad discretion in granting motions to intervene permissively, permissive intervention entails a lower standard than intervention as of right." *Mutuals.com*, 2004 WL 1629929, at *2 n.1 (citing *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir.1989)).

Where the government seeks to intervene in a civil matter in which the factual bases of the civil matter and a criminal investigation overlap, the threshold determination—of a question of law or fact in common—is satisfied. *See, e.g.*, *Se. Recovery Grp.*, 278 F.R.D. at 167 ("[B]oth the civil and criminal matters share common questions of law and fact relating to fraud allegedly perpetrated by plaintiff and/or its principals and/or their associates."); *Tajonera*, 2015 WL 893447, at *7 ([T[he United States has . . . affirmed that the subject of the criminal investigation and the civil lawsuit are identical and share common questions of law and fact. Therefore, the United States has demonstrated that intervention is appropriate.").

Courts in the Fifth Circuit have held that "[w]hether characterized as 'of right' or 'permissive,' intervention by the United States . . . is clearly appropriate" in civil cases where the United States has an overlapping and active criminal investigation. *Se. Recovery Grp.*, 278 F.R.D. at 167; *see also Tajonera*, 2015 WL 893447, at *7 ("Whether characterized as 'of right' or 'permissive,' intervention by the United States in this matter under Rule 24 is appropriate.").

In this instance, the government meets the requirements to intervene—both as a matter of right, or in the Court's exercise of its discretion—and its motion to do so should be granted.

11

## II.    PLAINTIFFS' MOTION TO APPOINT A RECEIVER SHOULD BE DENIED

Plaintiffs' extraordinary request for equitable relief in a presently stayed, uncertified class action directly conflicts with and seeks to undo a TRO issued by another federal district court based on a legally sufficient showing of ongoing criminal fraud.  And even if it were not directly in conflict with another court's existing order, Plaintiffs' requested relief would be costly, unnecessary, and burdensome to, among other things, an ongoing criminal investigation. Plaintiffs' motion should be denied.

As discussed above, on October 22, 2025, the Western District of Missouri entered the TRO pursuant to 18 U.S.C. § 1345, the Anti-Fraud Injunction statute.  *See* Exhibit B.  In relevant part, the TRO restrains HMA, PHMA, Regina Gorog, Elliott Gorog, and their agents, including financial institutions, from doing business through HMA's websites, soliciting and enrolling new customers, processing payments, accessing or using HMA's bank accounts, and disposing of any HMA or PHMA assets or co-mingled money.  *Id.* at 2–3.

On October 28, 2025, following public reporting of the FBI's execution of a search and seizure warrant at HMA's office, Plaintiffs filed the instant motion claiming an "urgent need for receivership" and accusing the FBI of ongoing "concealment" of HMA records that purportedly "remain hidden in FBI custody."  Dkt. No. 61-1 at 1, 5.  On October 29, 2025, Plaintiffs filed a Supplemental Memorandum in Support of Plaintiffs' Emergency Motion to Appoint Receiver, asserting that a receivership would "serve complementary purposes" and would not violate the existing TRO.  Dkt. No. 63 at 9–10.  This is simply incorrect.  The government is aware of its ability to seek a receiver under 18 U.S.C. § 1345.  The government chose not to request appointment of a receiver in the 1345 Proceeding for the same reasons that a receiver is not appropriate here, namely, that (1) a receiver would not provide any benefit not already

accomplished through the TRO, and paying a receiver only reduces the limited funds that will ultimately be available to victims; and (2) appointing a receiver to conduct any portion of HMA's operations on an ongoing basis would necessarily perpetuate a business that another district court has already found cause to believe is a Ponzi scheme.

Moreover, Plaintiffs' request for relief at this stage in the Contract Proceeding is fundamentally flawed[8]—Plaintiffs have not obtained a judgment against HMA, and thus, Plaintiffs have no legally recognized interest in HMA's property at this time. Plaintiffs' "emergency" is manufactured—the government has obtained an order restraining HMA's assets to halt any ongoing fraud and the continued harm to victims of making contributions to HMA. HMA's existing assets are not at risk of being dissipated. The government has created a website to provide HMA members with information about the 1345 Proceeding that contains a link to a form where HMA members can report their experiences with HMA, including losses, to the FBI.[9] There is no legal or factual basis for the Court to grant the relief sought; Plaintiffs' motion should be denied.

### A.    Legal Standard

"A receiver is '[a] disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims.'" *Ettore v. Russo's Westheimer, Inc.*, 677 F. Supp. 3d 644, 647 (S.D. Tex. 2023) (citation omitted). The appointment of a receiver is a procedural matter governed by federal law and federal equitable principles. *See Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291–92 (11th Cir. 1998) (explaining that the

---

[8] The government has been unable to locate *United States v. Camacho*, No. 4:13-cv-00100, 2013 WL 11327166 (S.D. Tex. Nov. 18, 2013), cited and quoted in Dkt. No. 61-1, on either Pacer or Westlaw—Case No. 4:13-cv-00100 is captioned *Trustees of The Texas Iron Workers Pension Trust Fund et al. v. Delta Structures Inc.* The government asked Plaintiffs' counsel to provide *Camacho* and in response was provided other cases, but these additional cases also did not contain plaintiffs' quoted language.

[9] *See* https://www.justice.gov/criminal/case/united-states-v-health-matching-account-services-inc-hma-pet-health-matching-account.

appointment of a receiver in equity is not a substantive right).  Receivers may be appointed "to preserve property pending final determination of its distribution in supplementary proceedings in aid of execution."  *Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241 (5th Cir. 1997) (quotations omitted).

Under Federal Rule of Procedure 66, "the appointment of a receiver can be sought 'by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer.'"  *Id.* (citation and quotation omitted).  Receivers have been used in a number of contexts, but only where the party requesting a receiver has a legally cognizable interest in the property that is subject to receivership. "'Secured creditors, lienholders, and mortgagees' may seek appointment of a receiver because they 'clearly have an interest in the property in which they have a security interest that may provide a basis for convincing the court to appoint a receiver ending a foreclosure suit or any other action to enforce one or more outstanding liens.'"  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (citations omitted).

Receivership, however, is "'an extraordinary remedy that should be employed with the utmost caution' and is justified only where (1) there is a clear necessity to protect a party's interest in property, (2) legal and less drastic equitable remedies are inadequate, and (3) the benefits of receivership outweigh the burdens on the affected parties."  *Netsphere*, 703 F.3d at 305 (enumeration added) (citation omitted); *see also Santibanez*, 105 F.3d at 241–42 (summarizing factors courts must consider before appointing a receiver).  "Importantly, to justify the appointment of a receiver such claims would *already have been reduced to judgment*."  *Netsphere*, 703 F.3d at 306 (emphasis added) (finding receivership improper and vacating order appointing receiver where "receivership was deemed imposed for unresolved claims"); *see also In re Fredeman Litig.*, 843

F.2d 821, 824 (5th Cir. 1988) ("The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.").

**B.    Plaintiffs Fail to Meet Each Factor for Appointment of a Receiver**

Plaintiffs' request for the Court to appoint a receiver fails as both a legal and factual matter under clear Fifth Circuit precedent. *See Netsphere*, 703 F.3d at 306 (listing factors for appointing receiver). As initial matter, Plaintiffs, at present, do not have a judgment against HMA, and the request should be denied for this reason alone. Moreover, even if Plaintiffs did have a legal right to HMA's assets, they have failed to make an adequate showing of necessity, that a less drastic remedy is not available, and that the benefits of a receiver would outweigh the burden.

**1.    Plaintiffs Do Not Have a Judgment Against HMA**

First, Plaintiffs must show "clear necessity" of a receiver to protect their interest in HMA's property. *Netsphere*, 703 F.3d at 305. For this factor, courts have considered whether there is a "probability that fraudulent conduct has occurred or will occur to frustrate that claim [or an] imminent danger that property will be concealed, lost, or diminished in value." *Capital Funding, LLC v. TLTX Holdings, LLC*, 2:20-CV-00005-Z, 2020 WL 264106, at *5 (quotation omitted) (N.D. Tex. Jan. 17, 2020) (denying plaintiff's motion to appoint receiver to enforce final monetary judgment, in part, because plaintiff's arguments were speculative); *see also Accordant Commc'ns, LLC v. Sayers Constr., LLC*, No. 1:19-CV-00401-LY, 2020 WL 7496657, at *3 (W.D. Tex. Apr. 7, 2020) (denying motion to appoint receive to enforce judgment where arguments about necessity "are based on pure speculation").

Simply put, at this time, Plaintiffs do not have a legal claim to HMA's assets. The fact that putative class Plaintiffs in this case do not have a judgment against HMA ends this inquiry.

"Without more, mere allegations of an unpaid debt are insufficient to show a legitimate interest in Defendant's property. And, at this stage of the litigation, Plaintiff has not obtained a judgment against Defendant to establish an interest in Defendant's assets. In turn, Plaintiff has no cognizable interest in Defendant's property." *Cabatech, LLC v. Nextlight, LLC*, No. 1:22-CV-59, 2023 WL 2643795, at *5 (S.D. Ohio Mar. 27, 2023) (denying emergency motion to appoint receiver and citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 320 (1999) (Until Plaintiff has "established [its] title, [it] has no right to interfere, and it would lead to an unnecessary, and, perhaps, a fruitless and oppressive interruption of the exercise of [Defendant's] rights.")); *see also Netsphere*, 703 F.3d at 308 ("Establishing a receivership to secure a pool of assets to pay Baron's former attorneys, who were unsecured contract creditors, was beyond the court's authority.") (citing *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923)).

The Southern District of Ohio's decision in *Compound Property* is analogous to the issues in the instant motion. There, a stipulated order was issued in a separate civil action in the Southern District of Ohio, which required the defendants to transfer to a third party servicing of all loans for certain mortgaged properties held by the defendants for the benefit of putative class members and potential putative class members. *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, No. 1:19-CV-133, 2020 WL 13460831, at *3 (S.D. Ohio June 19, 2020). The *Compound Property* plaintiffs, however, contended that the stipulated order did not adequately protect them or aid their efforts to obtain funds and moved to appoint a receiver. *Id.* The *Compound Property* court concluded that "Plaintiffs' request exceeds the boundaries of the Court's authority. Specifically, in cases in which a party is seeking a receiver to preserve assets to satisfy a judgment, like here, the party seeking such relief must first obtain a judgment against the defendant before seeking the appointment of a receiver." *Id.* at *3 (citing *Grupo Mexicano*, 527 U.S. at 322). The court, relying on *Grupo*

*Mexicano*, noted the "well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Compound Prop. Mgmt.*, 2020 WL 13460831, at *3 (quotations and citation omitted). Indeed, "[t]he reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and, perhaps, a fruitless and oppressive interruption of the exercise of the debtor's rights." *Grupo Mexicano de Desarrollo S.A.*, 527 U.S. at 320 (quotations and citations omitted). Thus, the court concluded that while it has broad equitable powers, the plaintiffs' request relief did not fall within the scope of the court's authority. *Compound Prop. Mgmt.*, 2020 WL 13460831, at *4.[10] The same is true here. The putative class Plaintiffs in this case may well obtain a judgment against HMA, but they do not have any such judgment or other legal right to restrain HMA's property now.[11]

Similarly, the government (not a private litigant) may request a receiver under 28 U.S.C. § 3103, and many of the cases Plaintiffs rely on arise from applications of the government's regulatory and statutory receivership powers. Specifically, Plaintiffs direct the Court to several

---

[10] The *Compound Property* court further found the plaintiffs' motion deficient because of the procedural posture—putative plaintiffs were, like here, an uncertified class. *Id.* "Plaintiffs' Motion neither specifically identifies those putative class members, nor the properties in which any specific class member has such an interest. But even had the Motion done so, the result would be the same. This case has not yet reached the class certification stage, meaning that the putative class members are not parties." *Id. See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (characterizing the "argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*" as "novel and surely erroneous") (quotation omitted) (emphasis in original). While the government believes the putative class in this case are likely victims who may be entitled to relief in the future, their claim is not yet ripe, and for this additional reason, a receiver is not appropriate.

[11] Nor is the appointment of a receiver for the purposes of filing bankruptcy necessary or appropriate, where, as here, a civil Anti-Fraud Injunction action and ongoing criminal investigation are pending in another district, and the TRO preserves HMA and PHMA's assets. Plaintiffs' counsel has not cited any case in which a district court has appointed a receiver to pursue a corporate bankruptcy at the request of putative class members without a civil judgment where the assets at issue are already preserved. *In re Bayou Grp., LLC*, 564 F.3d 541, 544 (2d Cir. 2009) (affirming district court's appointment of receiver at the request of creditors' committee after hedge fund manager pleaded guilty to federal fraud charges); *In re Petters Co., Inc.*, 401 B.R. 391, 398 (Bankr. D. Minn. 2009), *aff'd sub nom. Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*, 415 B.R. 391 (D. Minn. 2009), aff'd, 620 F.3d 847 (8th Cir. 2010) (appointing receiver at the request of the Government in 1345 action); *In re Monterey Equities-Hillside*, 73 B.R. 749, 751 (Bankr. N.D. Cal. 1987) (permitting receiver appointed at request of limited partners in a civil matter to file involuntary bankruptcy).

17

decisions arising from an investment fraud orchestrated by Robert Stanford, the former Chairman of Stanford International Bank ("SIB").  *See* Dkt. No. 61-1 at 20–22.  This line of cases is inapplicable for a number of reasons, including the involvement of U.S. regulatory entities such as the Securities and Exchange Commission, which requested the receivership.  HMA—perhaps by design—was neither an insurance provider nor a financial institution, was not publicly traded, did not offer registered securities, and was not subject to the same regulatory oversight and restrictions that applied to SIB.

## 2.  <u>Less Drastic Legal Remedies Are Already in Place</u>

Second, even if Plaintiffs could overcome their lack of judgment against HMA's assets (and they cannot), Plaintiffs have not and cannot show that less drastic legal remedies are inadequate.  *Netsphere*, 703 F.3d at 306.  "Appointing a receiver is a drastic and intrusive remedy. The Court should only resort to receivership when absolutely necessary."  *PNC Bank, N.A. v. 2013 Travis Oak Creek GP, LLC*, No. 1:17-CV-840-RP, 2018 WL 6433312, at *4 (W.D. Tex. Sept. 27, 2018) (denying motion for a receiver where court "finds that another legal and less drastic equitable remedy—the current preliminary injunction—is adequate to preserve the Property and manage the Partnership").  A receivership is not necessary or appropriate here, where the government has already restrained HMA and PHMA's assets through the 1345 Proceeding.

Plaintiffs assert that that less drastic legal remedies do not exist because "expedited discovery cannot access FBI files, attachment cannot restart operations, garnishment cannot process claims, and preliminary injunctions cannot manage assets."  Dkt. No. 61-1 at 10.  But as discussed above, the 1345 Proceeding enjoined HMA from operating and restrained its assets, and because its business model is fraudulent, as alleged by the government, it cannot resume operation under a receiver or otherwise.

Furthermore, Plaintiffs offer no support for their contention that the 1345 Proceeding is not adequate to protect potential victims' current rights. Their bald assertions are insufficient. *See Capital Funding*, 2:20-cv-00005-Z, 2020 WL 264106, at *6 (holding that plaintiff failed to show less drastic legal remedy available where it did not attempt other remedies, such as a writ of execution, garnishment, injunction, or foreclosure, before filing motion for receiver); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 4887139, at *2 (E.D. Tex. Oct. 3, 2019) (denying motion for a receiver where plaintiff failed to propose any "less drastic equitable remedy").

The government shares the goal of preserving HMA's remaining assets for victims, and the 1345 Proceeding does just that. The government is also providing information about the 1345 Proceeding to HMA members and offering them a way to report their losses. A less drastic remedy is already in place, and the Plaintiffs have not and cannot show the TRO is inadequate to provide the available legal relief to victims when Plaintiffs do not have a judgment against HMA or its owners and where resuming HMA's business operations in any form would perpetuate the fraud and victim harm.

### 3.    The Burden of a Receiver Far Outweighs Any Benefits

Finally, Plaintiffs "must show that the benefits of receivership outweigh the burdens." *Firequip, Inc. v. Precision Frac, LLC*, No. MO:17-CV-73-DC, 2023 WL 3273117, at *2 (W.D. Tex. Mar. 28, 2023). Plaintiffs plainly have not done so here.

As envisioned by Plaintiffs, the purported receiver will need to hire an army of "specialized professionals including healthcare claims processors familiar with medical billing, IT specialists to preserve and restore corrupted digital infrastructure, forensic accountants to trace fraudulently transferred funds, medical consultants to evaluate emergency claims requiring immediate payment, and legal counsel experienced in fraudulent transfer litigation and asset recovery." Dkt.

No. 61-1 at 23.  This is no benefit at all.  Even if a receiver could operate HMA without perpetuating the fraud (which the government contends is not possible), instead of assisting victim compensation, a receiver (and the additional professionals he retains) will drain the assets that could be available to victims at the resolution of the criminal investigation and any other actions against HMA.  This factor, like the others, counsels against a receivership in this case.

In addition to the monetary burden, a receiver is unnecessary because there is not a legitimate role for a receiver at this time.[12]  A receiver cannot be appointed to continue to collect member contributions and/or pay claims.  Continuing to collect member contributions would constitute a court-sanctioned continuation of the fraud, and paying any claims would require a receiver to arbitrarily prioritize certain victims (those currently making claims) over others (who have already paid into the scheme but are not currently making a claim).  *See, e.g.*, *Cunningham v. Brown*, 265 U.S. 1, 13 (1924) (holding that Ponzi scheme victims are equal before the law and "[t]hose who were successful in the race of diligence violated not only its spirit, but its letter, and secured an unlawful preference"); *see also United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) (affirming pro rata distribution to victims where district court found that "all the fraud victims were in equal positions and should be treated as such").[13]

Accordingly, the government respectfully requests that the Court deny Plaintiffs' motion to appoint a receiver.

---

[12] The government acknowledges that this could change in the future.  At some point, after the conclusion of a criminal and/or or civil action it could, for example, conceivably be appropriate for a receiver to pursue claims against third parties on behalf of victims.  But this is impossible without a final judgment against HMA or some other parties—at this juncture, it is impossible to even know who is a third party and who is not.

[13] Plaintiffs repeatedly frame the harm as a lack of access to health care. Dkt. No. 61-1 at 4, 9, 25.  To be clear, HMA is a supposed health savings account-like product.  It did not provide any direct health care and was not health insurance.  Instead, it purported to hold a savings account-like balance for customers that could be used after the fact to reimburse certain out-of-pocket medical expenses, including some items that might not be covered by health insurance.

## III.　THE COURT SHOULD STAY DEPOSITION DISCOVERY THE INSTANT CASE FOR SIX MONTHS

Finally, the government requests that this Court stay any depositions in the Contract Proceeding for the next six months.  Although discovery in the Contract Proceeding is currently stayed, the existing stay is set to expire in approximately two months, on January 5, 2026, and to be transparent as to all of the reasons it requests to be permitted to intervene, the government moves for this stay now.

In determining whether to stay a civil action in light of a concurrent criminal investigation, the Fifth Circuit has "directed district courts to employ '[j]udicial discretion and procedural flexibility' to 'harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other.'"  *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017) (quoting *Campbell*, 307 F.2d at 487).  In *Campbell v. Eastland*, the Fifth Circuit explained that "[a]dministrative policy gives priority to the public interest in law enforcement," and that "[t]his seems so necessary and wise that a trial judge should give substantial weight to it" when deciding whether to stay civil litigation pending criminal proceedings. *Campbell*, 307 F.2d at 487.[14]

In addition to Fifth Circuit's long-standing concern for protecting criminal investigations, district courts also employ a six-part test: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff; (4) the private interests of the defendant; (5) the interests of the courts; and (6) the public interest.  *Tajonera*, 2015 WL 893447, at *9.[15]  Here, each

---

[14] Although *Campbell* was decided in 1962, it remains the Fifth Circuit's seminal case on staying civil discovery pending criminal proceedings.  *See In re Grand Jury Subpoena*, 866 F.3d at 234; *Tajonera*, 2015 WL 893447, at *10; *Se. Recovery Grp.*, 278 F.R.D. at 169.

[15] While the Fifth Circuit has yet to articulate or endorse a specific factor-based test that courts should utilize in determining whether to grant a motion to stay civil proceedings pending criminal investigations, this six-factor test is

of the factors weighs in favor of the government's request for a limited stay, and the Court should grant a six-month stay of depositions in the Contract Proceeding.

### A.    The Extensive Overlap Between the Civil and Criminal Matters Supports a Stay

In general, the similarity of issues between the civil and criminal matter is considered the most important factor in determining whether to stay civil proceedings. *Ernst & Young*, 2020 WL 3960345, at *5 (citing *Dominguez*, 530 F. Supp. 2d at 906–07). Here, it is undisputed the underlying facts in the Contract Proceeding, the 1345 Proceeding, and the ongoing criminal investigation are the same.

If depositions move forward while the criminal investigation is pending, the government anticipates that Plaintiffs will seek to depose Regina and Elliott Gorog, who are both defendants in the 1345 Proceeding, as well as additional individuals involved with HMA. A stay is appropriate "when there is a real and appreciable risk of self-incrimination." *Warren v. Geller*, No. 2:11-CV-2282, 2013 WL 1455688 at *7 (E.D. La. Apr. 9, 2013) (quotation omitted); *see also Librado v. M.S. Carriers, Inc*., No. 3:02-cv-2095D, 2002 WL 31495988 at *2 (N.D. Tex. Nov. 5, 2002) ("If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay.") (citation omitted).

If the requested stay is not granted, HMA, defendant in the Contract Proceeding, could be put in the untenable position of being forced to choose between its civil discovery obligations and its principals' privilege against self-incrimination. *See Warren*, 2013 WL 1455688 at *10 (even

---

widely used by district courts in the Fifth Circuit. *See, e.g.*, *Ernst & Young*, 2020 WL 3960345, at *4; *Warren v. Geller*, 2013 WL 1455688, at *7; *Se. Recovery Grp.*, 278 F.R.D. at 166-67; *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-298-N, 2010 WL 11492395, at *2 (N.D. Tex. Jan. 5, 2010); *Alcala v. Texas Webb Cty.*, 625 F. Supp. 2d 391, 398-99 (S.D. Tex. 2009); *SEC v. Offill*, 3:07-CV-1643-D, 2008 WL 958072, at *2 (N.D. Tex. Apr. 9, 2008); *Dominguez*, 530 F. Supp. 2d at 905; *Whitney Nat'l Bank v. Air Ambulance ex rel. B & C Flight Mgmt., Inc.*, Civil Action No. 4:04-CV-2220, 2007 WL 1468417, at *2 (S.D. Tex. May 18, 2007).

where a defendant in a civil case has already participated in some civil discovery, once "the criminal investigation has been made known" the defendant may be "faced with choosing" between participating in discovery and his right against self-incrimination). Likewise, Plaintiffs could be prevented from obtaining deposition testimony that is necessary to pursue their case. *See Dominguez*, 530 F.Supp.2d at 907 (where a significant portion of questions posed to the defendants would likely result in an assertion of Fifth Amendment privilege, it weighs heavily in favor of a stay). Because the factual issues underlying the instant Contract Proceeding, the 1345 Proceeding, and the government's ongoing criminal investigation are identical, this factor weighs heavily in favor of granting the requested stay.

## B.    A Stay Is Warranted Because the Parallel Criminal Investigation Is Ongoing

The government has a strong interest in staying discovery while its criminal investigation is ongoing. District courts in the Fifth Circuit recognize that a stay of a civil case is most appropriate where a party to the civil matter has already been criminally charged with the same conduct. *Se. Recovery Grp.*, 278 F.R.D. at 168. "But when the government seeks a stay of civil discovery, the justification for obtaining a stay is often strongest before an indictment is handed down." *Offill*, 2008 WL 958072, at *2. The government's efforts to shield ongoing criminal investigations and grand jury hearings merit protection, *id.* at *3 (citation omitted), and the civil discovery process can disrupt and undermine pre-indictment criminal proceedings "at a particularly sensitive and critical stage." *Se. Recovery Grp.*, 278 F.R.D. at 168. Depositions in the Contract Proceeding could cause exactly the type of disruption that courts seek to prevent, and government's modest request to stay deposition discovery for six months in an ongoing criminal investigation weighs in favor of granting the requested stay.

23

C.      **Because Plaintiff Does Not Oppose the Government's Motion, the Plaintiffs' Interests Favor a Stay**

Where a plaintiff does not oppose a stay of civil discovery pending the resolution of criminal proceedings, the "plaintiff's interest" factor weighs in favor of granting a stay. *See Offill*, 2008 WL 958072, at *3 ("The SEC has consented to the stay of discovery. Thus this factor weighs in favor of a stay."); *Mutuals.com*, 2004 WL 1629929, at *3 ("In this case, the SEC has agreed to stay the civil proceedings. Therefore, the plaintiff's-interest factor weighs in favor of a stay."). Here, although Plaintiffs oppose the United States' intervention, they do not oppose the requested stay of depositions, so this factor also weighs in favor of a stay.

D.      **Defendant's Interests Favor a Stay**

A civil defendant's lack of opposition also weighs in favor of a stay. *Se. Recovery Grp.*, 278 F.R.D. at 168 ("Significantly, neither the defendant nor the original intervenor objects to the government's motion. Neither has asserted that it will be burdened by a stay or that it wishes to proceed with the civil case in the face of the criminal matter."). In this case, given that HMA does not oppose the government's motion to stay civil depositions for six months, defendant's interests equally favor a stay.

E.      **The Court's Interest in Judicial Economy Favors a Stay**

In staying civil cases, "[t]he court's interests in avoiding duplication of effort and advancing judicial economy are served. . ." *Se. Recovery Grp.*, 278 F.R.D. at 169. This Court could "streamline issues" in the present matter by granting the requested stay, *Ernst & Young*, 2020 WL 3960345, at *7, as the requested stay promotes the integrity of the ongoing criminal investigation and resolution of the parallel criminal investigation could obviate the need for civil rulings on certain evidentiary or discovery issues. *Id.* Further, because the resolution of criminal proceedings can "moot, clarify, or otherwise affect various contentions in the civil case," the

Court's interest in preserving judicial economy militates in favor of a stay. *Stanford Int'l Bank*, 2010 WL 11492395, at *3 (quoting *United States v. Mellon Bank*, N.A., 545 F.2d 869, 873 (3d Cir. 1976)).

    **F.**     **The Public's Interest Weighs in Favor of a Stay**

    District courts in the Fifth Circuit have emphasized that "the public interest in law enforcement efforts through criminal investigation and prosecution of alleged fraud is substantial." *Warren*, 2013 WL 1455688, at *11; *see also Tajonera*, 2015 WL 893447, at *10. Here, the public has a strong interest in protecting the integrity of the government's investigation and preserving the government's ability to hold accountable those who commit crimes. Given the posture of the Contract Proceeding, a six-month stay of depositions would impose a minimal, if any, delay in the resolution of the matter, but even where a stay delays the resolution of a civil case, "Fifth Circuit precedent advises that [the civil parties'] interest is subservient to law enforcement's prerogative in this situation." *Tajonera*, 2015 WL 893447, at *10. Accordingly, in cases where a civil suit and criminal investigation center on the same conduct, courts in the Fifth Circuit tend to find that the public interest weighs in favor of staying civil proceedings. *See, e.g.*, *id.* at *10; *Stanford Int'l Bank*, 2010 WL 11492395, at *4; *Offill*, 2008 WL 958072, at *4. The Court here should similarly determine that the public's sizeable interest in protecting the government's criminal investigation weighs strongly in favor of a limited six-month stay of depositions.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the United States' Motion to Intervene and For a Limited Stay of Discovery, and should deny Plaintiffs' Emergency Motion to Appoint Receiver.

Respectfully submitted,

LORINDA I. LARYEA                    R. MATTHEW PRICE
ACTING CHIEF                         UNITED STATES ATTORNEY
Fraud Section                        Western District of Missouri
Criminal Division
United States Department of Justice

_/s/ Sarah E. Edwards_                _/s/ Leigh Farmakidis_

SARAH E. EDWARDS                     LEIGH FARMAKIDIS
ALLISON L. MCGUIRE                   ASSISTANT UNITED STATES
TRIAL ATTORNEYS                      ATTORNEY

Fraud Section, Criminal Division     U.S. Attorney's Office
U.S. Department of Justice           Western District of Missouri
1400 New York Avenue, N.W.           400 E. 9th Street
Washington, D.C.  20005              Kansas City, MO 64106
Tel:    (202) 913-4782               Tel:    (816) 426-3122

## CERTIFICATE OF CONFERENCE

I certify that counsel for all parties were each contacted about this motion. On November 3, 2025, Alexander N. Loftus, Counsel for Plaintiffs, stated that Plaintiffs are opposed to the United States' motion to intervene, but do not oppose a six-month stay of deposition discovery. On November 3, 2025, Andrea M. Johnson, Counsel for Defendant, stated that Defendant is not opposed to the United States' motion to intervene or the requested six-month stay of deposition, but Defendant's position is that the entire case should be stayed for the six-month period.

*/s/  Sarah E. Edwards*
Sarah E. Edwards

## CERTIFICATE OF SERVICE

I hereby certify that, on November 4, 2025, I filed the foregoing motion with the Clerk of the Court using the ECF/CM system for filing and service on all counsel of record.

*/s/ Sarah E. Edwards*
Sarah E. Edwards