# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 08-CV-5348 (ADM/JSM) |
| ) | |
| THOMAS JOSEPH PETTERS, et al.; ) | |
| ) | |
| Defendants. ) | |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

| | |
|---|---|
| In re: | **Jointly Administered Under Case No. 08-46617** |
| Polaroid Corporation, et al., | |
| | 08-46617 (GFK) |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Polaroid Holding Company; | 08-46621 (GFK) |
| Polaroid Consumer Electronics, LLC; | 08-46620 (GFK) |

| | |
|---|---|
| Polaroid Capital, LLC; | 08-46623 (GFK) |
| Polaroid Latin America I Corporation; | 08-46624 (GFK) |
| Polaroid Asia Pacific LLC; | 08-46625 (GFK) |
| Polaroid International Holding LLC; | 08-46626 (GFK) |
| Polaroid New Bedford Real Estate, LLC; | 08-46627 (GFK) |
| Polaroid Norwood Real Estate, LLC; | 08-46628 (GFK) |
| Polaroid Waltham Real Estate, LLC) | 08-46629 (GFK) |

Chapter 7 Cases
Judge Gregory F. Kishel

## COORDINATION AGREEMENT AMONG PLAINTIFF UNITED STATES OF AMERICA, THE RECEIVER, CHAPTER 11 TRUSTEE OF PETTERS GROUP WORLDWIDE, LLC, CHAPTER 11 TRUSTEE OF PETTERS COMPANY, INC., ET AL., AND CHAPTER 7 TRUSTEE OF POLAROID CORPORATION, ET AL. N/K/A PBE CORPORATION, ET AL.

WHEREAS, on October 6, 2008, Plaintiff United States of America, in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, for the benefit of the victims of a massive fraud that took place at Petters Group Worldwide, LLC ("PGW") and Petters Company, Inc. ("PCI"), two of the defendants in the receivership civil action;

WHEREAS, for purposes of this agreement, the term "Individual Defendant" or collectively, "Individual Defendants," shall include Thomas Joseph Petters, Deanna Coleman, Robert White, James Wehmhoff, Larry Reynolds dba Nationwide International Resources, Michael Catain dba Enchanted Family Buying Company, and business entities owned or controlled by Thomas Joseph Petters except those entities in pending bankruptcy proceedings jointly administered in Bankruptcy Case Nos. 08-45257 and 08-46617 and all direct and indirect subsidiaries of such entities;

WHEREAS, based upon the conviction of Thomas J. Petters, and the guilty pleas of Individual Defendants, the United States holds the statutory authority to forfeit proceeds of fraud, and assets involved in or traceable to money laundering, including assets held by third parties, in accordance with 18 U.S.C. §§ 981 and 982, and contends that said authority vests in the United States the power to forfeit and seize all or substantially all of the assets of PGW and PCI upon conviction for the crimes now alleged against them, including assets of their subsidiaries, including but not limited to the bankruptcy estates of Polaroid Corporation, et al., n/k/a PBE Corporation, et al., jointly administered under Case No. 08-46617 ("PBE Estates");

2

WHEREAS, for purposes of the civil action commenced by the United States, the Court appointed Douglas A. Kelley as receiver (the "Receiver") on October 6, 2008 over companies directly or indirectly 100% owned or controlled by Thomas Joseph Petters, including PCI and PGW, as well as their respective subsidiaries, and as receiver on October 14, 2008 over the Individual Defendants who have all now either been convicted or have pleaded guilty in federal court of criminal offenses;

WHEREAS, in accordance with his power as the Receiver, on and after October 11, 2008, Kelley caused PCI and subsidiary and affiliated entities, including but not limited to PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One LLC, MGC Finance, Inc., PAC Funding, LLC, Palm Beach Finance Holdings, Inc. (collectively "PCI Estates") and PGW to file for bankruptcy protection under Chapter 11 ("PGW Estate"), and caused the entities comprising the PBE Estates to file for bankruptcy protection under Chapter 11;

WHEREAS, the Office of the United States Trustee appointed, and thereafter, the United States Bankruptcy Court approved, Kelley to act as Chapter 11 Trustee for the PCI Estates and for the PGW Estate (in such capacity "Trustee"), and upon conversion to Chapter 7, John R. Stoebner to act as Chapter 7 Trustee for the PBE Estates (in such capacity "Stoebner");

WHEREAS, Thomas J. Petters ("Petters") has been convicted and sentenced, and the United States and the Receiver expect Individual Defendants to be sentenced within the next months;

WHEREAS, the United States, Kelley, as the Receiver and Trustee, and Stoebner seek to maximize recovery to victims and creditors and minimize receivership and bankruptcy expenses through the coordination of their respective efforts for the victims and creditors;

WHEREAS, to date, the United States Attorney's Office has sought to forfeit certain assets owned by Individual Defendants, and will seek to return the proceeds of forfeited assets to victims pursuant to Part 9 of Title 28, Code of Federal Regulations;

WHEREAS, there is a significant overlap of identity between victims of the fraud and creditors of the PCI Estates and the PGW Estate, and competing litigation would result in the overall diminishment of the recovery for victims and creditors alike and undue delay in the distribution of assets;

WHEREAS, the United States and Kelley, acting in his capacities as the Receiver and as Trustee, and Stoebner desire to compromise and resolve their respective claims to property subject to the Court's Preliminary Order of Forfeiture and property of the receivership and bankruptcy estates;

WHEREAS, Kelley, as Receiver, requires that this Coordination Agreement be contingent upon judicial approval of the Agreement in the receivership action;

WHEREAS, Kelley, as the Chapter 11 Trustee of the PCI Estates and the PGW Estate, and Stoebner, as the Chapter 7 Trustee of the PBE Estates, require that this Coordination Agreement be contingent upon judicial approval of the Agreement in their respective bankruptcy cases;

THEREFORE, Plaintiff United States, Douglas A. Kelley, as the Receiver and Trustee, and John R. Stoebner, Trustee for the PBE Estates, agree as follows:

I. RECEIVERSHIP WIND DOWN PLAN FOR INDIVIDUAL DEFENDANTS

    A. The Receiver and the United States Attorney's Office will jointly identify all unliquidated assets personally owned by each Individual Defendant.

        1. The Receiver will provide the United States Attorney's Office with a schedule for each defendant of all identified assets personally owned by each Individual Defendant.

        2. The Receiver will provide the United States Attorney's Office with access to all information, documentation and analysis, including the work performed by PricewaterhouseCoopers ("PWC"), addressing the assets personally owned by the Individual Defendants.

        3. The government will provide the Receiver/Trustee access to information consistent with its discovery obligations to the extent possible to assist in the recovery of assets for victims and creditors, subject to the interests of ongoing government investigations and the constraints set forth in Federal Rule of Criminal Procedure 6(e) and otherwise.

    B. Unless the United States Attorney's Office and the Receiver agree otherwise, the parties agree that the assets owned by the Individual Defendants shall be addressed in the following manner:

        1. <u>Assets Owned Wholly by an Individual Defendant</u>. The parties agree that the United States Attorney's Office will execute on or will forfeit the individual assets personally owned by such defendant and will seek to liquidate those assets for the benefit of the victims through remission of assets.

            a. <u>Corporate Ownership Interests</u>. The parties agree that the United States Attorney's Office will execute on or will forfeit the corporate ownership interests of such Individual Defendant, other than as provided in Section I.B.1.b., and the United States will seek to liquidate those assets for the benefit of the victims through remission of assets.

            b. <u>Petters' Ownership Interest in Bankruptcy Entities</u>. As part of this agreement, and in exchange for the consideration set forth herein, the United States agrees not to forfeit or to execute on defendant

4

        Petters' direct or indirect ownership interests in the PCI Estates, the PGW Estate, Petters Capital, LLC, Petters Aviation, LLC, or their subsidiaries (including subsidiaries of subsidiaries), to the extent agreed upon in Section II.C.

2.    <u>Assets Subject to Third-Party Claims</u>. The parties agree that the United States Attorney's Office will forfeit assets owned by the Individual Defendants jointly with third parties or those Individual Defendant assets that are subject to third-party claims (such as security interests), or will otherwise execute on the Individual Defendant's interest, and will seek to liquidate those assets for the benefit of the victims.

3.    <u>Assets Transferred to Third Parties</u>.

      a.    <u>Individual Defendant Transfers</u>. Subject to the following paragraph, unless the United States Attorney's Office and the Receiver agree otherwise, the parties agree that the United States Attorney's Office will use its forfeiture or other authority to recover assets transferred by the Individual Defendants to third parties, and will seek to return the proceeds of the forfeited or recovered assets for the benefit of the victims through remission of assets.

      b.    <u>Charitable Donations</u>. The United States and the Receiver acknowledge that demands previously have been made by the Receiver, and that additional demands will be made, on behalf of Individual Defendants, Thomas J. Petters Family Foundation or other Receiver entities against entities or individuals including certain religious, charitable, educational and/or political institutions for the return of donations and gifts. The parties agree that the return of such funds may be used for the satisfaction of professional fees and expenses incurred by the receivership and for the benefit of the victims, as approved by the Court in which the receivership is pending.

      c.    All funds recovered by the Receiver or Trustee from charitable donations made by the Individual Defendants pursuant to the preceding paragraph shall be transferred to the United States pursuant to paragraph I.B.4. below, after the Receiver's fees and expenses are covered. All funds recovered by the Receiver from charitable donations made by any other person or entity except the Individual Defendants shall be administered by Kelley as Receiver and/or Trustee, as applicable under paragraph III.B.2., after the Receiver's fees and expenses are covered.

5

    4. <u>Assets Subject to Forfeiture</u>. Upon the entry of a court order directing that assets may be seized or restrained by the United States, directing the forfeiture of assets, or otherwise directing the Receiver to turn over assets, the Receiver shall turn over the assets to the United States as directed in the order. Any unresolved claims to the assets will be addressed in the criminal case pursuant to Fed. R. Crim. P. 32.2, or in the civil forfeiture proceedings. The government will seek to return the proceeds of forfeited assets to victims pursuant to the remission process under the provisions of Title 28, Code of Federal Regulations, Part 9.

    5. <u>Subsequently Obtained Assets</u>. If, following the transfer of an Individual Defendant's assets by the Receiver, the Receiver comes into possession of additional assets owned by an Individual Defendant, the Receiver shall transfer funds or transfer property to the United States for liquidation for the benefit of the victims through remission of assets.

  C. Based on the pending criminal sentencings and the wind down plan set forth herein, the United States and the Receiver expect that receivership expenses will diminish and will substantially cease following the sentencing of the last Individual Defendant. The United States does not expect to recommend significant receivership fees following the sentencing of the last Individual Defendant; provided that the United States and the Receiver recognize that under this Agreement, the parties may agree the Receiver should take on additional responsibilities if such efforts are in the best interest of the victims in which case additional receivership fees will be incurred and recommended by the United States. The Receiver agrees to use his best efforts to minimize fees and costs incurred by the receivership estate subject to the performance of his duties and the discharge of his responsibilities pursuant to court order, and to use his best efforts to utilize the United States Bankruptcy Court and his position as Trustee to maximize recovery to creditors.

  D. In exchange for the consideration set forth herein, and in an effort to maximize coordination and minimize unnecessary cost and undue delay, Kelley, as Trustee of the PCI Estates and of the PGW Estate, and other than as expressly provided in this Agreement, agrees to relinquish claims to the assets covered in Section I of this Agreement and agrees to execute releases as are necessary and appropriate for the recovery and distribution of the foregoing assets pursuant to Section I.

II. <u>CORPORATE CRIMINAL LIABILITY AND FORFEITURE</u>

  A. On December 1, 2008, a United States Grand Jury returned an indictment against PCI and PGW for their respective criminal conduct in furthering a $3.7 billion fraud. Those charges remain pending against PCI and PGW.

  B. As part of this agreement, and in an effort to avoid undue and wasteful litigation expenses, and in light of the overwhelming evidence already adduced by the government in the trial of Thomas Joseph Petters, Kelley, as Trustee, agrees that

          PCI and PGW will seek Bankruptcy Court approval to enter guilty pleas pursuant to the plea agreements.

    C.    In exchange for the guilty pleas and the other consideration set forth herein, the United States agrees, unless otherwise agreed by Kelley, as the Receiver or as Trustee, and the United States, (i) <u>not</u> to seek forfeiture of assets (tangible or intangible) and (ii) <u>not</u> to otherwise execute on assets (tangible or intangible), owned by the PCI Estates and the PGW Estate, and their respective subsidiaries (including subsidiaries of subsidiaries) including but not limited to actions (and proceeds therefrom) brought (i) for the return of corporate assets, (ii) on behalf of the PCI Estates and the PGW Estate against professionals, and (iii) for the return of false profits or other clawback or avoidance claims, including principal from a purported loan to, or investment in any entity comprising the PCI Estates or the PGW Estate, or any corporate affiliates, provided that such assets are distributed as part of a bankruptcy proceeding overseen by the Office of the United States Trustee and subject to the approval and adjudication of the United States Bankruptcy Court. Except as provided in Section I of this Agreement and unless the trustee of the following respective bankruptcy estates agrees otherwise, the United States further agrees <u>not</u> to seek forfeiture of assets (tangible or intangible) of the PBE Estates, Petters Capital, LLC bankruptcy estate, Petters Aviation, LLC bankruptcy estate, or any of their subsidiaries (including subsidiaries of subsidiaries), including but not limited to actions (and proceeds therefrom) brought (i) for the return of corporate assets, (ii) against professionals, and (iii) for the return of false profits or other clawback or avoidance claims, including principal paid on a purported loan or investment.

III.    <u>BANKRUPTCY ESTATES</u>

    A.    <u>Allocation of cost and Intercompany Issues</u>. Kelley, as the Receiver and Trustee, and Stoebner agree that as of July 1, 2010, all expenses incurred for the benefit of the bankruptcy estates, whether such expenses are incurred for the benefit the PCI Estates, PGW Estate or PBE Estates, directly, or for the benefit of any subsidiary (whether or not such subsidiary is itself in bankruptcy), the value of which will inure to the benefit of the bankruptcy estates, will be submitted in the bankruptcy proceedings in accordance with the applicable provisions of the Bankruptcy Code, Federal Bankruptcy Rules and Local Rules, for review, approval and payment.

        1.    Kelley, as the Receiver and Trustee, and the United States, acknowledge and agree that while some of the receivership expenses incurred prior to May 1, 2010, particularly those related to professionals, will inure in part to the benefit of the PCI Estates and the PGW Estate, such expenses may be paid from the receivership.

        2.    <u>PricewaterhouseCoopers Expenses</u>. The Receiver retained PWC to provide certain services for the benefit of a number of entities including the PBE Estates. Receiver has requested that he be allowed a Chapter 7 and Chapter 11 administrative expense claim in the PBE Estates

7

Bankruptcy proceeding with respect to the fees and expenses of PWC that relate to the PBE Estates. Kelley, as the Receiver, and Lindquist & Vennum as Chapter 11 counsel to the PBE Estates and special counsel to the Chapter 7 Trustee of the PBE Estates, have represented that they believe that the PBE Estates have received the benefit of at least $852,620.00 of accounting services and investigation performed by PWC for which the receivership has or will pay PWC for the period December 18, 2008 to June 30, 2010. Stoebner and Receiver stipulate to the allowance of the following administrative expense claims:

a.  For Kelley as the Receiver, in the amount of $298,972.48 as an allowed Chapter 11 Administrative expense claim.

b.  For Kelley as the Receiver, in the amount of $553,647.52 as a Chapter 7 Administrative expense claim. Subject to subparagraph 3(c) below, this claim will be paid by Stoebner upon Bankruptcy Court approval of this Agreement and subject to the availability of funds pursuant to future cash collateral orders in the PBE Estates cases.

The payments and provisions as outlined in this paragraph, are subject to Court approval of this Agreement by both the Bankruptcy Court in the Polaroid Corporation bankruptcy proceeding, BKY No. 08-46617 and the U.S. District Court in Civ. No. 09-CV-5348.

3.  $500,000 Held in Trust Account. The PBE Estates advanced the sum of $500,000 to Kelley as the Receiver on December 18, 2008. The response to Question 10 of the Statement of Financial Affairs in the PBE Corporation Bankruptcy Proceeding 08-46617 states, "Prior to petition, $500,000 payment was made with the approval of the Honorable Ann D. Montgomery, U.S. District Court Judge for the District of Minnesota, as Polaroid Corporation's equitable share of receivership expenses in Civ. No. 09-CV-5348 (ADM/JSM). These funds are presently held in trust by Kelley, Wolter & Scott pending further direction from Judge Montgomery." Stoebner and Kelley as Receiver stipulate that the $500,000 is property of the PBE Estates. Kelley, as the Receiver and Lindquist & Vennum as Chapter 11 and Chapter 7 counsel for the PBE Estates, represent that $407,761.82 of the $500,000 payment was a fair and equitable approximation of the costs and fees incurred by the receivership on behalf of Polaroid Corporation prior to the Polaroid Corporation's Chapter 11 petition having been filed. Upon Court approval Kelley shall be authorized to:

a.  Reimburse the receivership in the amount of $407,761.82 as and for the expenses and fees incurred prior to December 18, 2008 described below:

8

       i.    PricewaterhouseCoopers in the amount of $5,953.29
      ii.   Lindquist & Vennum in the amount of $258,048.25
     iii.   FTI in the amount of $7,953.00
     iv.   Kelley, Wolter & Scott in the amount of $135,807.28

    b.    Apply $32,343.32 in payment towards the Chapter 11 Administrative expense claim described in subparagraph 2a. above.

    c.    Apply $59,894.86 in payment towards the Chapter 7 Administrative expense claim described in subparagraph 2b above.

The payments and provisions as outlined in this paragraph, are subject to Court approval of this Agreement by both the Bankruptcy Court in the Polaroid Corporation bankruptcy proceeding, BKY No. 08-46617 and the U.S. District Court in Civ. No. 09-CV-5348.

4.    The receivership has advanced funds to the PCI Estates and the PGW Estate since October 2008, to cover operational expenses of the PCI Estates and the PGW Estate to maximize the estates for the benefit of the victims and creditors. The receivership will waive any claim to the return of such funds as ordinary course loans, or upon any other theory.

5.    Stoebner has demanded that the PGW Estate return shares of PWB Health Limited and Wideblue Limited to the PBE Estate which Stoebner asserts were transferred to PGW in May 2008 for no consideration. Stoebner and the PGW Estate agree to resolve this demand by the PGW Estate assigning any interest in the shares and any other obligations of PWB Health Limited or Wideblue Limited to the PBE Estates.

6.    Pursuant to a Settlement Agreement made and entered into as of January 1, 2008, Polaroid Holding Company and PGW resolved a claim against Lawrence Harmer in exchange for a promissory note in the amount of $5,080,099.80, payable from Harmer to PGW. Stoebner has demanded that the PGW Estate assign its interest in the promissory note to Stoebner, asserting that PGW provided no value for any interest in the note. Stoebner and the PGW Estate agree to resolve this demand by the PGW Estate assigning, to Stoebner upon the request of Stoebner, any interest in the note or proceeds derived therefrom.

B.    Third-Party Litigation.

    1.    Kelley, as the Receiver and Trustee, agrees that all fees and expenses arising on and after May 1, 2010, from litigation and claims by the PCI Estates or the PGW Estate, or their subsidiaries (including subsidiaries of subsidiaries), including but not limited to actions brought for the return of corporate assets, actions brought on behalf of the PCI Estates or the PGW

9

Estate against professionals, current or former employees, and actions for the return of false profits or other clawback or avoidance claims, including principal from a purported loan to, or investment in any entity comprising the PCI Estates or the PGW Estate (or any corporate affiliates), including cases in which parallel claims are brought by Kelley, as the Receiver and Trustee, will be submitted in the bankruptcy proceedings in accordance with the applicable provisions of the Bankruptcy Code, Federal Bankruptcy Rules and Local Rules for review, approval and payment. The United States acknowledges that the receivership expenses incurred prior to May 1, 2010 for the efforts of professionals will inure, in part, to the benefit of the bankruptcy estates and third-party litigation.

2. If there is a recovery (by settlement or following litigation) based on parallel claims pursued by Kelley, as the Receiver and Trustee, the proceeds of the recovery will inure to the benefit of the bankruptcy estates; unless there is a judgment or recovery based solely on a claim made by the Receiver, in which case, the proceeds will be turned over to the United States for the benefit of victims through remission of assets after the bankruptcy estates have been reimbursed for all fees and expenses paid or incurred in conjunction with the action that resulted in the recovery.

3. Kelley, as Trustee, agrees to consult and confer with the creditors committee regarding the litigation and claims against third parties for the return of false profits or other clawback or recoverable claims, including principal from their purported loan to or investment in the PCI Estates or the PGW Estate, or their subsidiaries (including subsidiaries of subsidiaries).

4. In exchange for the consideration set forth herein, and in an effort to maximize coordination and minimize unnecessary cost and undue delay in distributions, unless otherwise agreed by Kelley, as the Receiver or as Trustee, and the United States, the United States Attorney's Office agrees it will not pursue its forfeiture claims against third parties for the return of corporate asset transfers, including but not limited to the false profits or other clawback or avoidance claims, including principal from purported loans or investment in entities comprising the PCI Estates or the PGW Estate. The United States Attorney's Office agrees to execute releases as are necessary and appropriate for the recovery of the foregoing assets.

## IV. MISCELLANEOUS PROVISIONS

A. This agreement will not become effective, and no party shall have any obligations under this agreement, until such time as the courts overseeing the receivership, the PCI Estates, the PGW Estate and the PBE Estates approve this Coordination Agreement.

B. This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement. No person or entity which is not a party to this Agreement will have or acquire any rights or remedies under or by reason of this Agreement.

Dated: *Aug. 16*, 2010

B. TODD JONES
United States Attorney

BY: GREGORY G. BROOKER
Assistant U.S. Attorney

Dated: *Aug 16*, 2010

DOUGLAS A. KELLEY
Court-Appointed Receiver

Dated: *Aug 16*, 2010

PETTERS COMPANY, INC., ET AL.

BY: DOUGLAS A. KELLEY
Bankruptcy Trustee

Dated: *Aug 16*, 2010

PETTERS GROUP WORLDWIDE, LLC

BY: DOUGLAS A. KELLEY
Bankruptcy Trustee

Dated: *Aug 16*, 2010

PBE CORPORATION, ET AL.

BY: JOHN R. STOEBNER
Bankruptcy Trustee

REVIEWED AND APPROVED:

_____
ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE


REVIEWED AND APPROVED:

_____
GREGORY F. KISHEL
UNITED STATES BANKRUPTCY JUDGE

12