IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBIE POPE, ET AL., *on behalf of themselves and all others similarly situated*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:24–CV–04611 |
| | § | Judge Ellison |
| HEALTH MATCHING ACCOUNT SERVICES, INC., | § § § | |
| Defendant. | § § | |

**DEFENDANT HEALTH MATCHING ACCOUNT SERVICES, INC.'S
<u>REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY STAY OF PROCEEDINGS</u>**

Defendant Health Matching Account Services, Inc. ("HMAS") files this Reply in Support of its Motion for a Temporary Stay of Proceedings ("Motion"), DE 76, as follows:

**A.   Reply Summary**

Plaintiffs' Response does not dispel the one unwavering truth: Due to real, not imagined, Fifth Amendment concerns, Defendant is entitled to a stay of all proceedings <u>*for the same short time period (six months)*</u> *to which Plaintiffs have already agreed.* *See* Government's Motion, DE 72 at 29, the *Pope* Case.[1] That Plaintiffs are unopposed on this point (regarding depositions) plainly supports Defendant's Motion because they acknowledge that the right against self-incrimination[2] is fully at play here, given that the Missouri criminal investigation[3] contains the same or similar fraud accusations about HMAS representatives (for example, that fraud occurred

---

[1] *Pope, et al., v. Health Matching Account Services, Inc.*, 4:24-CV-04611, filed on November 22, 2024.
[2] U.S. Const., Amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself.") ("Fifth Amendment").
[3] *See United States v. Health Matching Account Services, Inc., et al.*, No. 4:25-cv-000814-RK (the "Missouri Action"). The redacted complaint in the Missouri Action is attached as Exhibit A to the Motion and is docketed as DE 12, originally filed Oct. 17, 2025, in the Missouri Action. *See* repeated fraud accusations in ¶¶1, 3, 58, 59, and *passim*, DE 12 in Missouri Action (also the "§1345 Complaint"), Ex. A to Motion.

1

and that the wire fraud laws have been violated) as those made by Plaintiffs in the related civil class actions before this Court, the *Pope* Case and the "*Mainini* Lawsuit."[4] The *Mainini* Lawsuit is Plaintiffs' latest class action complaint, filed just days after Defendant's stay Motion was filed.[5]

Plaintiffs' argument about overlap (based solely on a lack of an indictment) is disingenuous, at best, because it is Plaintiffs who have pled these civil allegations (with numerous similarities in the Missouri Action, *see* Ex. A to Motion), and it is Plaintiffs' counsel who fed data to the Government, leading to the Missouri investigation. *See* attached Ex. C (email of Plaintiffs' counsel, "**I've been in contact with AUSA for months now. How do you think they were able to move so fast?**") (emphasis added). The implication of the Fifth Amendment is not fictional; it is real and sustained by Plaintiffs' own statements, just as the Missouri Action directly accuses HMAS representatives repeatedly of fraud and federal law violations, all based on the same facts in the civil cases. *See* ¶¶1, 3, 58, 59, and *passim*, the §1345 Complaint (Ex. A to Defendant's Motion). Bottom line, Plaintiff's central argument is not controlling; rather the issue is whether an overlap of issues exists such that the right against self-incrimination is at stake. Without doubt, that is the case here. *See* DE 1 in both the *Pope* Case and the *Mainini* Lawsuit and Ex. C, attached, along with the §1345 Complaint, Ex. A to Motion.

The Missouri Action investigation already alleges that federal fraud law has been violated, and the investigation is precisely aimed at procuring criminal fraud indictments at least as to

---

[4] Plaintiffs' most recent lawsuit is *Mainini, et al., v. Health Matching Account Services, Inc., et al.*, 4:25-CV-05381, filed on November 11, 2025 (the "*Mainini* Lawsuit"), which is obviously related to the *Pope* Case. Robert Mainini was a class representative Plaintiff in the *Pope* Case for over nine months until, on August 15, 2025, Plaintiffs unceremoniously dismissed his claims with two other Plaintiffs (Mr. Woodbright and Mr. Meuret), DE 41, 43, the *Pope* Case. Both cases contain allegations and references to fraud and wrongful commercial action, though the *Pope* Case formally has alleged only a breach of contract count, and the *Mainini* Lawsuit has both fraud and breach of contract counts (among other allegations). *Compare* DE 1 in the *Pope* Case with DE 1 in the *Mainini* Lawsuit, which has HMAS as a Defendant along with Regina Gorog and her son, Elliot, both target defendants of the Missouri Action; the *Mainini* Lawsuit also names other parties, *e.g.,* Garland Levit and Geoff Kirk, who appear to be within the larger investigation by the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") in Missouri.
[5] The Motion was filed on November 7, 2025, while the *Mainini* Lawsuit started on November 11, 2025.

Regina Gorog and her son, Elliot, HMAS principals (and others sued in the *Mainini* Lawsuit might be subject to the Government's investigation, as well).  See ¶¶1, 3, 58, 59, and *passim*, the §1345 Complaint (Ex. A to Defendant's Motion).  Whether those indictments actually happen (and who, if anyone, is charged) remain to be seen, of course, but the Government's pointed accusations and its indictment design, without question, exists.[6]  In light of its targeted investigation, <u>the Government</u> first suggested that a six-month stay in the *Pope* Case would be appropriate, to which Plaintiffs offered no objection, at least as to deposition testimony.  In sum, a short six-month stay of all civil activity in the *Pope* Case while the criminal matter is sorted, for which the Government has logically argued (and Plaintiffs have agreed to as to depositions), will not unduly delay these proceedings but will protect the Fifth Amendment rights of the HMAS' connected individuals.

**B.     Plaintiffs Provide No Meaningful Response; the Absence of an Indictment Is Not Dispositive; the Stay Follows Due to the Overlap of Issues.**

Plaintiffs offer nothing *contra* to the obvious overlap of civil facts and issues before this Court with the criminal facts and issues in Missouri; an absence of an indictment is not dispositive.

The following is often stated:  "The first and 'most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.'" *Bean v. Alcorta*, 220 F. Supp. 3d 772, 775-76 (W.D. Tex. 2016). This is so because the issue of self-incrimination is evident where there is significant overlap. *Id.* at 776. That overlap is certain here.

The only argument Plaintiffs point to (in a single sentence) is that no formal indictment has been handed down, *yet*.  DE 83 at 2 (*Pope* Case).  But  Plaintiffs do not dispute that accusations of criminal acts are explicitly alleged, as noted above, against several persons who managed Defendant and that others (including parties in the *Mainini* Lawsuit) are the subjects of possible

---

[6] *See, e.g., United States v. Real Property Located at 18202 Girasole, San Antonio, Bexar County, Texas*, No. 5:16–CV–1133–DAE, 2017 WL 11207330, at *4 (W.D. Tex. June 1, 2017) (stay justified, even with no indictment).

investigation, and Plaintiffs do not show how their allegations in the *Pope* Case (or in the *Mainini* Lawsuit) are really different from the focus of the Missouri Action. In fact, as noted, the very aim of the Missouri Action is to see what charges will or may be leveled against those associated with HMAS. *See* §1345 Complaint at ¶¶1, 3, 58, 59, and *passim* (Ex. A to the Motion). These facts are more than enough to demonstrate that "civil issues overlap with the criminal issues,"[7] and numerous cases hold that the lack of an indictment does not bar a stay.

Where the potential criminal issues are obvious, the lack of an indictment does not bar a stay. *See, e.g., United States v. Real Property Located at 18202 Girasole, San Antonio, Bexar County, Texas*, 2017 WL 11207330, at *4 (granting Government motion) ("A stay will preserve the integrity of the highly sensitive criminal investigation that runs concurrent to this immediate civil forfeiture proceeding."); *Akuna Matata Invs., Ltd. v. Tex. Nom Ltd.*, No. SA-05-CV-1053-FB, 2008 WL 2781198, at *2 (W.D. Tex. Apr. 14, 2008) (stay entered even though "it is not clear [defendant's experts] are under scrutiny . . . because the criminal investigation may well extend to [defendant's] entire . . . organization."); *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07–CV–1188–D, 2008 WL 866065, at *3 (N.D. Tex. Mar. 17, 2008) (no indictment; stay ordered where "the criminal charges, if they are forthcoming, will be directed at the same conduct that forms the basis" of the civil case); *see also Spinnaker Fin. Inc. v. Logistical Sols. Int'l, Inc.*, No. H-15-1703, 2016 WL 7757393, at *1 (S.D. Tex. Mar. 14, 2016) (stay previously granted to co-defendant "on the ground that she had been identified as a target of the criminal investigation").

Plaintiffs invoke the term "speculation." But the facts actually alleged both in the criminal investigation and before this Court are in black and white; they are not speculation; there is more

---

[7] *Bean*, 220 F. Supp. 3d at 775-76 ("The first and "most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Meyers*, 2016 WL 393552, at *6 (quoting *AmeriFirst Funding*, 2008 WL 866065, at *2). Where there is significant overlap, self-incrimination is more likely and thus weighs in favor of a stay. *AmeriFirst Funding,* 2008 WL 866065, at *2.").

than ample connection of the civil and criminal issues (otherwise, the Government would not have suggested as much, and the Plaintiffs would not have agreed to the stay as to depositions). To that point, the criminal investigation complaint (Ex. A to the Motion, the §1345 Complaint) is so clearly tied to the claims before this Court that it, the §1345 Complaint, contains an entire section describing the civil allegations in this case. *See id.* at ¶¶ 52-53.

Further, a cursory review of both the civil allegations and the Missouri Action show that the claims intertwine and mirror each other: (1) that HMAS allegedly wrongfully changed its claims processing method and required individuals to continue contributing to their accounts or forfeit their entire balance;[8] and (2) allegedly it defrauded consumers when it induced them to become members and open accounts, only to refuse to make payments for claims individuals submitted under their contracts as part of a "Ponzi Scheme."[9]

Plaintiffs' written civil allegations are bonded to the criminal investigation accusations. *See Kinnie Ma Individual Ret. Acct. v. Ascendant Cap.*, LLC, No. 1:19-cv-01050-RP, 2023 WL 5417142, at *5 (W.D. Tex. Aug. 21, 2023) ("a high degree of overlap" between facts and accusations in the civil and criminal proceedings). When the proceedings "arise from the 'same set of operative facts' and . . . the witnesses and documentary evidence in both matters are the same," those facts demonstrate the "extent of overlap." *Id.,* 2023 WL 5417142, at *4 (quoting *Duncan v. Banks*, No. SA-15-CV-148-XR, 2017 WL 4805111, at *3 (W.D. Tex. Oct. 24, 2017)). Given the facts and allegations civilly and criminally, it can hardly be said that there is no overlap.

All discovery is related in both the civil and criminal matters. No question exists that HMAS-related persons noted in the Missouri Action and in the *Pope* Case and the *Mainini* Lawsuit

---

[8] *Compare, e.g.,* the Complaint, DE 1 at ¶100, the *Pope* Case (along with Plaintiffs' Response, DE 83 at 4, the *Pope* Case) *with* Ex. A, the §1345 Complaint, at ¶20.
[9] *Compare, e.g.,* the Response, DE 83 at 4, 6 (the *Pope* Case) *with* Ex. A, the §1345 Complaint at ¶¶ 17-51.

5

may supply sworn testimony here, and, certainly Plaintiffs will seek to discover the same records seized by the FBI as evidence as part of the criminal investigation. *See* Response at 4, DE 83 (*Pope* Case). Moreover, Plaintiffs' counsel has admitted supplying data directly to the DOJ. *See* Ex. C. So, indisputably, the criminal issues have grown from the civil side and *vice versa* – precisely as Plaintiffs' counsel seems to have planned. *See id.*

Because of this conspicuous overlap, HMAS will be "unlikely to be able to 'effectively defend the civil suit'" unless its principals and witnesses risk waiving their Fifth Amendment right.[10] In sum, this most critical factor heavily favors a stay, despite the lack of an indictment.

**C.    The Prejudice to Plaintiffs is Nothing More Than Mere Delay.**

With a stay being favored, Plaintiffs' other arguments about "indefiniteness" and prejudice are groundless. *See* Response at 3-5, DE 83 (*Pope* Case). First, Plaintiffs already have agreed to the six-month stay time (as to depositions), and that limited period cannot possibly be described as "indefinite." All HMAS seeks is a stay of all proceedings for the same duration as Plaintiffs agreed to and as requested by the Government (which is conducting the investigation into the Missouri Defendants, and, presumably, has the greater insight about the time needed).

Further, numerous courts have rejected Plaintiffs' argument. For example, in *Bean v. Alcorta*, the plaintiff argued "that the civil case has been pending for over two years, the reasons for the stay are too speculative, and that length of the stay Defendant is requesting is too indefinite." 220 F. Supp. 3d at 776. The court granted the stay, finding no prejudice to the plaintiffs "other than a delay in their right to pursue their claim." *Id.* at 777.

On this issue, Plaintiffs offer not a single case or viable argument except an oblique

---

[10] *Kinnie Ma Individual Ret. Acct.*, 2023 WL 5417142, at *5 (*quoting Alcala v. Texas Webb County*, 625 F.Supp.2d 391, 401 (S.D. Tex. 2009)).

assertion that discovery may be lost with the brief passage of time. Response at 4, DE 83 (*Pope* Case). Three points:

(1) Plaintiffs do not show why they would agree to a six-month stay as to depositions but not to other discovery.

(2) "Plaintiffs do not identify any discovery now that is available now but would be unavailable later . . . . They have not alleged that any witnesses . . . will be unable to testify, nor that any particular evidence will degrade if a stay is granted." *Bean*, 220 F. Supp. 3d at 777.

(3) And, even if Plaintiffs had been able to point to discovery about which they are concerned (which they have not done), several other reasons demonstrate the utter absurdity of the argument.

As the Court knows, <u>the FBI shut down all of HMAS' operations and seized all of its assets and records</u>, *see* Ex. B to the Motion, DE 77-1 (*Pope* Case) (note also that the Missouri TRO was extended to January 22, 2026, when the preliminary injunction will proceed, Ex. D, attached). The TRO guarantees that the Government has secured the HMAS documents and assets. Further, the Government's seizure means that Defendant cannot produce its documents. As a result, discovery cannot truly proceed even absent a stay, and, likewise, *even if the records were here*, the HMAS representatives (*e.g.,* Regina Gorog and her son Elliot and perhaps others identified in the *Mainini* Lawsuit) cannot testify, respond to interrogatories, provide declarations, other affirmations, or acknowledgements in the *Pope* Case, without risking self-incrimination.

In short, Fifth Amendment protection should not be sliced and diced to cover only depositions while leaving other defense areas open to possible self-incrimination concerns. The slight prejudice to Plaintiffs pales in comparison to the danger posed to these constitutionally-protected individuals. *See Akuna Matata Invs., Ltd. v. Tex. Nom Ltd.*, No. SA-05-CV-1053-FB, 2008 WL 2781198, at *2 (W.D. Tex. Apr. 14, 2008) (experts risked self-incrimination, even where "it is not clear [defendant's experts] are under scrutiny").

Plaintiffs rely on *Braswell v. United States*, 487 U.S. 99 (1988) to assert that Fifth Amendment concerns can be "speculative." Response at 3, DE 83 (*Pope* Case). But *Braswell* found only that a principal could not invoke his right against self-incrimination when producing company books and records because "the custodian's *act of production* is not deemed a personal act, but rather an act of the corporation." *Braswell*, 487 U.S. at 110 (emphasis added). What *Braswell* does not address are HMAS' concerns regarding its ability to present witnesses, respond to interrogatories, provide declarations, and submit sworn testimony of its principals. That is far from speculative, and, in line with many other cases noted, the real constitutional danger is more than sufficient to base a stay. Further, as noted, the FBI controls HMAS' records, so document production is an irrelevant point; HMAS has no access to its records.

Plaintiffs also strangely argue that the restraining order issued in Missouri (extended to January 22, 2026, *see* Ex. D) and HMAS' inability to mediate *support* denying the stay. Response, DE 83 at 5 (*Pope* Case). In fact, the opposite is true. Not staying the *Pope* Case will result in no expeditious resolution here – mediation is impossible at this point. HMAS no longer controls its assets and documents, and the uncompleted criminal investigation will prevent Defendant's representatives from participating meaningfully in other defense of the *Pope* Case.

On balance and in line with the public interest in preserving the Fifth Amendment right, little prejudice will be suffered by Plaintiffs by the short delay. *See Holden Roofing, Inc. v. All States Roofing, Inc.*, No. H-06-3406, 2007 WL 1173634, at *2 (S.D. Tex. Apr. 18, 2007) ("the public's interest in an accused's ability to assert a Fifth Amendment privilege outweighs the public's interest in a civil litigant's expeditious resolution of its case"). Therefore, because "Plaintiffs are unlikely to face any significant prejudice if a stay is granted; accordingly, this factor weighs in favor of granting a stay." *Bean*, 220 F. Supp. 3d at 777.

**D.  Denying the Stay Would Burden, Not Improve, Judicial Economy.**

In like manner, Plaintiffs' argument about judicial economy is falsely based.  Plaintiffs ignore that when "granting a stay will not unduly interfere with [the court's] management of its docket," a stay is favored.  *See id.*.  Also, they contradict themselves, suggesting that "specific discovery concerns" can be addressed by the Court as this action continues. *See* Response at 6, DE 83 (*Pope* Case).  It is difficult to see how judicial economy is promoted by forcing this Court to "make question-by-question rulings" about the myriad issues that will arise.  *See Golden Roofing, Inc. v. All States Roofing, Inc.*, No. H-06-3406, 2007 WL 1173634, at *2 (S.D. Tex. Apr. 18, 2007).  Consequently, judicial economy also favors granting a stay.

For these reasons, HMAS respectfully requests that its Motion be granted.

Dated: November 20, 2025.                    Respectfully submitted,

By: */s/ Dennis P. Duffy*
**Christopher C. Pappas**
Texas Bar No. 15454300
S.D. Tex. Fed. No. 5966
**Dennis P. Duffy**
Texas Bar No. 06168900
S.D. Tex. Fed. No. 10502
**Andrea M. Johnson**
Texas Bar No. 10679600
S.D. Tex. Fed. No. 1285
KANE RUSSELL COLEMAN LOGAN PC
5151 San Felipe, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7400
Fax: (713) 425-7700
cpappas@krcl.com
dduffy@krcl.com
ajohnson@krcl.com

*Counsel for Defendant Health Matching Account Services, Inc.*

**CERTIFICATE OF SERVICE**

  This is to certify that on the 20th day of November, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF notification system on all counsel of record.

               */s/ Andrea M. Johnson*
               Andrea M. Johnson